## A05A0003. WALDEN v. THE STATE.
### (616 SE2d 462)

ANDREWS, Presiding Judge.

Paula Ann Walden lost control of the truck she was driving and struck and killed a pedestrian. A jury found Walden guilty under OCGA § 40-6-393 (a) of first degree vehicular homicide based on the charge that she caused the death by driving the truck in reckless disregard for the safety of persons or property in violation of OCGA § 40-6-390 (a). Walden was also found guilty on a separate charge of reckless driving in violation of OCGA § 40-6-390, but that conviction was vacated by operation of OCGA § 16-1-7 (a) when the trial court merged it into the first degree vehicular homicide conviction and imposed sentence only on the vehicular homicide. *Wade v. State*, 258 Ga. 324, 326 (368 SE2d 482) (1988). On appeal, Walden claims the evidence was insufficient to support the guilty verdict for first degree vehicular homicide because the State failed to produce evidence that she drove the truck in violation of the reckless driving statute set forth in OCGA § 40-6-390. Because we find there was ample evidence that Walden recklessly drove the truck in violation of OCGA § 40-6-390, we affirm the conviction for first degree vehicular homicide based on the predicate violation of reckless driving.

A grand jury returned a nine-count indictment against Walden that included three counts of attempted acquisition of controlled substances, two counts of acquisition of controlled substances, one count of reckless driving, one count of driving under the influence of drugs, and two counts of first degree vehicular homicide. Walden's motion to sever the five charges relating to the acquisition of controlled substances was granted. Thereafter, Walden was tried separately on charges of reckless driving, driving under the influence of drugs, and two counts of first degree vehicular homicide. After the jury found Walden guilty on one count of first degree vehicular homicide and reckless driving, she entered a guilty plea to the five counts that were severed.

On appeal, Walden no longer enjoys the presumption of innocence and the evidence adduced at trial must be viewed in a light most

favorable to the jury's verdict. *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998). So considered, the evidence shows that on September 4, 1997, at approximately 3:30 p.m., Walden was driving a pickup truck in Athens. As Walden drove westbound on a four-lane section of Prince Avenue, Bertha Moore, the driver behind her, noticed her "erratic driving." Moore saw Walden's truck twice cross over the centerline of the road and weave back across the line. While continuing behind Walden at about 35 or 40 mph, Moore then saw Walden's truck cross the centerline for a third time, go across the two lanes of oncoming traffic, just miss a telephone pole, jump the curb, and then proceed down the adjacent sidewalk on the opposite side of the street. The truck hit a pedestrian on the sidewalk, throwing the victim onto the hood of the truck. The force of the impact knocked the victim out of her shoes and imbedded some of her groceries in the front grill of the truck. The victim died shortly after arriving at a hospital as a result of severe injuries she sustained when she was hit by Walden's truck.

Police interviewed Walden and other witnesses and examined the physical evidence at the scene. Officer Frank Smith described Walden as "swaying kind of from side to side" and having difficulty responding coherently to his questions. He suspected the involvement of alcohol. After being read the implied consent notice and advised of her rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), Walden signed a waiver of rights form and consented to a blood test. In a statement she later gave to police, Walden said that she had slept six hours the night before the accident and that, in the twenty-four hours prior to the accident, she had taken the drugs Darvocet, Flexeril, Remeron, Imitrex, and Tylenol.

Crime lab test results showed that Walden's blood tested positive for opiate and barbiturate class drugs. The tests showed that her blood contained butalbital at .9 milligrams/liter, codeine at 15 micrograms/liter, meprobamate at 6 milligrams/liter, and positives with no specific amounts for carisoprodol, propoxyphene and nortriptyline. Evidence showed that propoxyphene commonly known as Darvocet is a synthetic narcotic and nortriptyline is an antidepressant. Several of the drugs contained warnings about causing drowsiness, impairing mental or physical abilities, and using caution when engaging in tasks requiring alertness such as driving. Pharmacy records indicated that, shortly before the fatal accident, Walden filled overlapping prescriptions for Lorcet Plus (a painkiller), Ultram (a pain medication) and carisoprodol (a muscle relaxant). Dr. Cham Dallas, director of the University of Georgia's toxicology program, testified that butalbital, a barbiturate, has a depressive effect on the central nervous system and creates problems with the coordination needed for driving, and that

carisoprodol, a muscle relaxant, depresses the central nervous system, causes drowsiness, and "alter[s] the ability of the brain to function." He also explained that codeine "metabolized into Morphine" alters the ability to remember things and to perform motor tasks, and causes drowsiness and forgetfulness. Dr. Dallas testified that butalbital, carisoprodol, and meprobamate are classic additive drugs, meaning that they "just add on top of each other." In his opinion, the drug levels in Walden's blood were likely higher at the time of the collision than when her blood was later drawn. Based on the blood test results, he felt that "it would be unsafe to drive."

Officer Stephen Murray testified that when he spoke with Walden at the scene, she did not make sense and "just seemed completely out of it." Officer Murray testified that "[w]hen I talked to her she was there, but was not there." Officer Gary Epps, who also spoke with Walden at the scene, believed that Walden was "under the influence of something" and "seemed a little bit slow." Officer Epps testified that "[a]s she would look at me it was kind of a blank stare as in just looking through me as opposed to looking at me. I had to repeat questions a couple of times for it to sink in with her. She just seemed real dazed and confused." Police found no evidence that Walden had braked, skidded or attempted to turn sharply prior to impact with the victim. A mechanical inspection of the truck revealed nothing wrong with the brakes or steering.

When Moore, who was driving the car behind Walden, realized that Walden had struck a pedestrian, she stopped to help. Moore noticed that Walden did not appear to be concerned or upset, but seemed "just calm, not as someone who had just struck another human being." A registered nurse, who stopped at the scene to render aid to the victim, heard Walden say that "she was sleepy and she shouldn't be driving." Another driver who stopped at the scene testified that Walden appeared "dazed or just having woken up or something." Finally, another witness testified that Walden told her, "I should not have been driving. I was too sleepy."

1. Walden contends that there was insufficient evidence to prove that her conduct amounted to reckless driving in violation of OCGA § 40-6-390 (a).

First, she contends that, even if there was evidence that she lost control of the truck because she was tired or asleep as a result of drug consumption, this was not sufficient to prove that she was guilty of reckless driving under OCGA § 40-6-390 (a). Walden argues that driving while tired or asleep cannot be considered reckless driving in violation of OCGA § 40-6-390 (a), because to broadly construe the statute to include such conduct would render it unconstitutionally vague. In *Wilson v. State*, 245 Ga. 49, 51 (262 SE2d 810) (1980), the Supreme Court considered a claim that the reckless driving statute

was unconstitutionally vague because it lacked any specific standards by which reckless driving could be determined. Finding no constitutional infirmity, the Court noted that "[a] criminal statute is sufficiently definite if its terms furnish a test based on normal criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command." Id. at 53. Applying that standard, the Court concluded that the reckless driving statute "is sufficiently definite to inform a person of common intelligence as to when he is violating the law." Id.

There was evidence that Walden's use of certain prescription drugs while driving caused her to be so tired, drowsy, or otherwise impaired that she was unable to control the truck, and that this precipitated the reckless driving violation. See *Hill v. State*, 207 Ga. App. 65, 66 (426 SE2d 915) (1993). This evidence was properly admitted to prove the charged offense, and was sufficient to allow the jury to conclude beyond a reasonable doubt that Walden was guilty of first degree vehicular homicide when she caused the victim's death through reckless driving. OCGA §§ 40-6-393 (a); 40-6-390 (a); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Second, Walden contends that the evidence was insufficient to prove reckless driving as the predicate or underlying violation for first degree vehicular homicide because the State failed to prove that she knew she was so tired or impaired that there was a substantial risk she might fall asleep, and that, despite this knowledge, she disregarded the risk and continued to drive. To the contrary, we find that the State produced sufficient evidence for the jury to conclude that Walden acted with the requisite criminal negligence.

A crime is defined in Georgia as "a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence." OCGA § 16-2-1. Accordingly, "[c]riminal negligence may sometime[s] be a sufficient substitute for deliberate intention in the commission of [a] crime." (Punctuation omitted.) *J. A. T. v. State of Ga.*, 133 Ga. App. 922, 923 (212 SE2d 879) (1975). Here, the reckless driving charge, the predicate violation for vehicular homicide, was based on evidence that Walden recklessly drove her truck off the road and fatally injured a pedestrian, and that these acts were precipitated by Walden's use of certain prescription drugs. See *Hill*, 207 Ga. App. at 66; *Nash v. State*, 179 Ga. App. 702, 704 (347 SE2d 651) (1986), overruled on other grounds, *Atlanta Independent School System v. Lane*, 266 Ga. 657, 658 (469 SE2d 22) (1996). We have held under similar circumstances that charges of reckless driving require proof of criminal negligence.[1] *Carrell v.*

---

[1] This is an exception to the general rule that statutes set forth in OCGA Title 40, Chapter

*State*, 261 Ga. App. 485, 487 (583 SE2d 167) (2003); *Putman v. State*, 257 Ga. App. 902, 904 (572 SE2d 412) (2002); *Johnson v. State*, 170 Ga. App. 433, 435-436 (317 SE2d 213) (1984); compare *Asberry v. State*, 193 Ga. App. 711, 712 (389 SE2d 18) (1989) (criminal negligence not applicable where it was not supported by the evidence). Criminal negligence means not merely such negligence as might render one liable for damages in a civil suit, but recklessness or carelessness of such character as to show a disregard of consequences or a heedless indifference for the safety and rights of others who might reasonably be expected to be injured thereby. *Keye v. State*, 136 Ga. App. 707, 708 (222 SE2d 172) (1975); *Johnson*, 170 Ga. App. at 435; *Cain v. State*, 55 Ga. App. 376, 380-383 (190 SE 371) (1937).

> [T]he violation of the safety statute regulating the use of highways does not constitute criminal negligence, unless such violation is intentional, wilful, or wanton, or unless the violation, though unintentional, is accompanied by recklessness or is under circumstances from which probable death or injury to others might be reasonably anticipated.

(Punctuation omitted.) *Johnson*, 170 Ga. App. at 436.

Applying these principles, which were charged to the jury by the trial court, we conclude the evidence was sufficient for the jury to find beyond a reasonable doubt that Walden acted with the requisite criminal negligence when she recklessly drove the truck after taking prescription drugs. Walden admitted after the accident that she had taken numerous prescription drugs and that she knew she was too sleepy to safely drive. Evidence showed that the drugs were labeled with warnings that they could cause drowsiness. Nevertheless, Walden continued to drive after twice swerving across the centerline before she completely lost control of the truck and hit and fatally injured the pedestrian. The State also produced expert evidence that the level and type of drugs found in Walden's blood rendered it unsafe for her to drive. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt all the elements of first degree vehicular homicide based on the predicate violation of reckless driving. OCGA §§ 40-6-393 (a); 40-6-390 (a).

2. Walden contends that the State could not use evidence that Walden's driving was impaired by drug use to prove reckless driving in violation of OCGA § 40-6-390 (a), because a charge of driving under

6, Uniform Rules of the Road, are strict liability offenses, which require no proof of culpable criminal intent or criminal negligence, but require proof of intent only in the sense that there was an intent to commit the prohibited act. *Hoffer v. State*, 192 Ga. App. 378, 380 (384 SE2d 902) (1989); *Arnold v. State*, 228 Ga. App. 470, 471-472 (491 SE2d 819) (1997).

the influence of drugs in violation of OCGA § 40-6-391 was the sole basis for prosecution. A similar contention was rejected in *Hill*, 207 Ga. App. 65, where the accused was found guilty of first degree vehicular homicide based on the predicate violation of reckless driving, but was acquitted of first degree vehicular homicide based on the predicate violation of driving under the influence of drugs. We found that, despite the acquittal involving the predicate DUI violation, "where an accused is charged with reckless driving, test results showing his use of drugs are admissible because the reckless driving violation could have been precipitated by the drug usage." Id. at 66. There is no merit to this contention.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MAY 20, 2005 —
RECONSIDERATION DENIED JUNE 17, 2005 — 

*Jo Nesset-Sale*, for appellant.
*Kenneth W. Mauldin, District Attorney, John M. Chenhall, Assistant District Attorney*, for appellee.