S07G1798. DUNAGAN v. THE STATE.
(661 SE2d 525)

HINES, Justice.
We granted certiorari to the Court of Appeals in *Dunagan v. State*, 286 Ga. App. 668 (649 SE2d 765) (2007), to consider whether defendant Dunagan's proffered evidence regarding the design of the intersection at which the collision at issue occurred was properly excluded. Finding that the exclusion of the proffered evidence was error, we reverse the judgment of the Court of Appeals.

The evidence as set forth in the opinion by the Court of Appeals, was the following: on February 17, 2004, Aaron Dunagan was driving his truck south on a highway when he approached an intersection;

---

the posted speed limit was 65 miles per hour; warning signs of the approaching intersection were posted approximately 700 feet north of it; before he reached the intersection, the light directed at the north and south lanes of the highway changed from green to yellow; Dunagan then accelerated through the intersection, running what had become a red light, and struck a sports utility vehicle ("SUV") attempting to turn left in front of him on its passenger side; Dunagan told a state trooper at the scene that "I tried to beat the light and didn't make it"; although the driver of the struck SUV was unconscious at the scene, Dunagan was able to leave his vehicle without assistance; he had been drinking beer earlier in the day, smelled of alcohol, and showed signs of impairment on field sobriety tests administered at the scene; he also tested positive on two different alco-sensors; after Dunagan was arrested, he refused the State-administered alcohol test; the victim suffered severe brain damage and other injuries, is a quadriplegic, and is unable to speak or eat; a jury found Dunagan guilty of reckless driving, running a red light, and serious injury by vehicle based on reckless driving;[1] and Dunagan was sentenced as a recidivist.

On appeal to the Court of Appeals, Dunagan argued, inter alia, that the trial court committed reversible error by granting the State's motion in limine and excluding all evidence "as to the inherent dangerousness of the intersection prior to the accident and the subsequent improvements to correct these problems." Without explanation, the Court of Appeals expressly addressed only that portion of this enumerated error and argument regarding whether it was error to exclude evidence of prior collisions at the same intersection; it concluded that the question of whether Dunagan drove through the intersection with the reckless disregard necessary to prove both reckless driving and serious injury by vehicle had nothing to do with the history of prior collisions at the intersection, and that given that there was no evidence of a signal malfunction at the intersection, the trial court did not abuse its discretion when it excluded evidence concerning prior incidents there as irrelevant to the question of Dunagan's reckless disregard.[2] Id. at 670 (2).

---

[1] The jury acquitted Dunagan on charges of driving under the influence of alcohol and serious injury by vehicle based on driving under the influence of alcohol.

[2] As already stated, the focus of this appeal is to consider whether evidence of design defects in the intersection was properly excluded; however, it should be noted that in a civil context, the Court of Appeals has recognized that "[e]vidence of other accidents or near accidents at the same intersection at other times under the same or similar circumstances are admissible to show the existence of a dangerous condition." *Ga. Dept. of Transp. v. Brown*, 218 Ga. App. 178, 183 (4) (460 SE2d 812) (1995). See also *Bassham v. Diamond*, 148 Ga. App. 620, 621 (1) (252 SE2d 23) (1979). Compare *Whitley v. Gwinnett County*, 221 Ga. App. 18 (470 SE2d 724) (1996).

Dunagan contends that the Court of Appeals erroneously decided and otherwise neglected to address his enumeration and argument that the trial court erred in excluding evidence as to both the inherent dangerousness of the intersection prior to the incident and the Department of Transportation's subsequent corrective measures.[3] We agree.

Dunagan's claim regarding the inherent dangerousness of the intersection plainly included much more than the request to admit into evidence a history of prior mishaps at the scene. He sought to introduce documentary and testimonial evidence, allegedly illustrating the hazardous design and consequent malfunctioning of the intersection during the time in question, and evidence of corrective measures taken since the collision which he hoped would demonstrate the intersection's known design defects contributing to the collision. He argues that such evidence was crucial to defend against the criminal charges and to support his affirmative defense of accident. And indeed, such evidence was relevant to the charged crimes and to his asserted defense.

As noted, Dunagan was found guilty of reckless driving (OCGA § 40-6-390[4]), running a red light (OCGA § 40-6-20[5]), and serious injury by vehicle based upon reckless driving (OCGA § 40-6-394[6]), and consequently, sentenced as a recidivist (OCGA § 17-

---

[3] The State asserts that the portion of Dunagan's argument concerning actual modifications made to the intersection after the wreck is moot inasmuch as the trial court allowed Dunagan to introduce testimony concerning such modifications, including that such modifications had resulted in a decrease in accidents, and that Dunagan erroneously contends that the trial court excluded the cross-examination testimony of two witnesses as to corrective measures regarding the intersection. While the trial transcript does show that the trial court initially stated that it would allow evidence of improvements made to the intersection, it also reveals that later in the trial, the trial court instructed the jury that it was to disregard "any evidence as to things that the Department of Transportation may have done at this intersection subsequent to February the seventeenth, 2004."

[4] OCGA § 40-6-390 provides in relevant part:
(a) Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving.

[5] OCGA § 40-6-20 provides in pertinent part:
(a) The driver of any vehicle shall obey the instructions of an official traffic-control device applicable thereto, placed in accordance with this chapter, unless otherwise directed by a police officer, subject to the exceptions granted the driver of an authorized emergency vehicle in this chapter.

[6] OCGA § 40-6-394 states in relevant part:
Whoever, without malice, shall cause bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, by seriously disfiguring his body or a member thereof, or by causing organic brain damage which renders the body or any member thereof useless through the violation of Code Section 40-6-390 or 40-6-391 shall be guilty of the crime of serious injury by vehicle.

10-7[7]).[8] He sought to argue that the design flaws, and consequent known inherent dangers, in the intersection negated the elements of criminal negligence and proximate cause in regard to the reckless driving charge and his claim of accident. As Dunagan correctly argues, criminal negligence may support the offense of reckless driving, and it is more than the negligence that might render one liable for damages in a civil suit; it is recklessness or carelessness so as to show a disregard of consequences or a heedless indifference for the safety and rights of others who might reasonably be expected to be injured thereby. *Walden v. State*, 273 Ga. App. 707, 710-711 (1) (616 SE2d 462) (2005). Even the found violation of a highway safety

---

[7] OCGA § 17-10-7 provides:

(a) Except as otherwise provided in subsection (b) of this Code section, any person convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, who shall afterwards commit a felony punishable by confinement in a penal institution, shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

(b)(1) As used in this subsection, the term "serious violent felony" means a serious violent felony as defined in subsection (a) of Code Section 17-10-6.1.

(2) Any person who has been convicted of a serious violent felony in this state or who has been convicted under the laws of any other state or of the United States of a crime which if committed in this state would be a serious violent felony and who after such first conviction subsequently commits and is convicted of a serious violent felony for which such person is not sentenced to death shall be sentenced to imprisonment for life without parole. Any such sentence of life without parole shall not be suspended, stayed, probated, deferred, or withheld, and any such person sentenced pursuant to this paragraph shall not be eligible for any form of pardon, parole, or early release administered by the State Board of Pardons and Paroles or for any earned time, early release, work release, leave, or any other sentence-reducing measures under programs administered by the Department of Corrections, the effect of which would be to reduce the sentence of life imprisonment without possibility of parole, except as may be authorized by any existing or future provisions of the Constitution.

(c) Except as otherwise provided in subsection (b) of this Code section, any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state other than a capital felony must, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

(d) For the purpose of this Code section, conviction of two or more crimes charged on separate counts of one indictment or accusation, or in two or more indictments or accusations consolidated for trial, shall be deemed to be only one conviction.

(e) This Code section is supplemental to other provisions relating to recidivous offenders.

[8] Dunagan was also charged with and tried for the offenses of driving under the influence of alcohol, OCGA § 40-6-391, and serious injury by vehicle based upon a violation of OCGA § 40-6-391, but he was found not guilty of these charges.

statute, such as running a red light as in this case, may not constitute criminal negligence, unless the violation is intentional, wilful, or wanton, or though unintentional, is accompanied by recklessness or is under circumstances from which probable death or injury to others might be reasonably anticipated. Id. at 711 (1).

Any absence of criminal negligence was relevant also to the defense of accident. See OCGA § 16-2-2.[9] In the affirmative defense of accident, a defendant bears the burden of establishing that his or her actions did not show an utter disregard for the safety of others who might reasonably be expected to be injured thereby. *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998).

Furthermore, the question of proximate cause of the injuries at issue was probative on the charge of serious injury by vehicle based upon reckless driving, and proximate cause is a jury question. See *McGrath v. State*, 277 Ga. App. 825, 828-829 (627 SE2d 866) (2006); *Baysinger v. State*, 257 Ga. App. 273, 274 (1) (570 SE2d 593) (2002). Proximate cause is also relevant to the defense of accident on the criminal charges. See *Corbett v. State*, 277 Ga. App. 715, 718 (1) (b) (627 SE2d 365) (2006). Thus, any evidence of known design defects in the intersection was relevant on the issue of proximate cause of the collision, and would bear directly upon the ultimate issue of Dunagan's guilt of the charged crimes. The admission of any relevant evidence is favored, even if its probative value is slight; evidence of questionable or doubtful relevancy or competency should be admitted and its weight left for the jury to determine. *Baker v. State*, 246 Ga. 317, 319 (2) (271 SE2d 360) (1980); *Howell v. State*, 278 Ga. App. 634, 638-639 (3) (629 SE2d 398) (2006).

What is more, the Court of Appeals has acknowledged that evidence, including Department of Transportation records, that shows a documented history of problems in an intersection is relevant and admissible in a criminal prosecution for the offense of serious injury by vehicle. See *Gibson v. State*, 280 Ga. App. 435, 436 (1) (634 SE2d 204) (2006). In *Gibson*, the Court of Appeals held that the trial attorneys rendered deficient performance by, inter alia, "failing to conduct an adequate pretrial investigation concerning the history of malfunctions at [the] intersection [at issue]." Id. at 437 (1). Indeed, that Court characterized documentary evidence of signal light malfunctioning at the intersection in question as "critical evidence," and found that the trial attorneys had rendered deficient performance also in failing to introduce such evidence. Id. The State attempts to

---

[9] OCGA § 16-2-2 provides:

A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence.

distant the present case from *Gibson* by claiming that there is no issue of a malfunctioning traffic signal. But, Dunagan's counsel argued to the trial court about the mistiming of signal lights as part of the alleged design defect of the intersection. Moreover, even assuming the functioning of traffic signals is not at issue in this case, the *Gibson* analysis acknowledges the importance of evidence which might provide information about the functioning of the intersection at the time of the collision giving rise to the criminal prosecution.

As to the evidence of subsequent modifications to the intersection, it was admissible not only to attempt to show that there were known flaws in the intersection, and hence known dangers, at the time of the collision but also that the Department of Transportation was the responsible party.[10] This is so because "[g]enerally, evidence implicating another named [party] as the actual perpetrator of the crime is relevant and admissible as tending to exonerate the defendant." *Azizi v. State*, 270 Ga. 709, 714 (6) (512 SE2d 622) (1999).

Certainly, the admissibility of evidence is a matter largely within the discretion of the trial court. *Simmons v. State*, 282 Ga. 183, 187 (10) (646 SE2d 55) (2007); *Howell v. State*, supra at 638-639 (3). But, that discretion can be abused, and so it was in the present case. The trial court abused its discretion in granting the State's motion in limine to exclude Dunagan's evidence of the design of the intersection prior to and subsequent to the wreck.

Consequently, the judgment of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for consideration consistent with this opinion.

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED MAY 19, 2008.

*H. Maddox Kilgore, Stephen F. Lanier*, for appellant.
*Leigh E. Patterson, District Attorney, Charles S. Cox, Assistant District Attorney*, for appellee.

---

[10] This is in contrast to the general rule in negligence actions that evidence of subsequent remedial measures is inadmissible. *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 397 (306 SE2d 657) (1983). The exclusion of this kind of evidence in civil actions is grounded in the public policy that parties should be encouraged to make needed repairs without fear of admission of liability. *Dept. of Transp. v. Cannady*, 270 Ga. 427, 428 (1) (511 SE2d 173) (1999). Thus, the propriety of the admission of the evidence of post-collision remedial measures in the present criminal case does not affect the principles and policies governing the admission of such evidence in civil cases.