**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 30, 2014**

# In the Court of Appeals of Georgia

A14A0450. HAMMILL v. THE STATE.

BARNES, Presiding Judge.

This case arises out of the collision of two jet skis on Lake Lanier. The collision occurred when the defendant, Taylor Whitfield Hammill, struck the other jet skier from behind at a speed of 30 to 40 mph. Based on evidence that Hammill had been consuming alcohol and operating his jet ski in a reckless manner, a jury found him guilty of two counts of serious injury by vessel, one count of reckless operation of a vessel, and one count of operating a vessel under the influence of alcohol. The trial court subsequently denied Hammill's motion for new trial, and this appeal followed. Hammill maintains on appeal (1) that the State failed to prove proximate cause, an essential element of the offense of serious injury by vessel; (2) that the trial court erred in limiting his counsel's recross-examination of an officer about whether

Hammill had refused a State-administered blood test; (3) that the prosecutor improperly commented in the presence of the jury on his right not to testify and incriminate himself; (4) that the trial court erred in denying his motion for mistrial or in failing to give a curative instruction when the prosecutor allegedly made an improper remark in closing argument regarding Hammill's refusal to submit to a State-administered breath or blood test; and (5) that the trial court erroneously charged the jury on the inference that could be drawn from his refusal to submit to a State-administered breath or blood test. For the reasons discussed below, we affirm.[1]

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence showed that Hammill, the victim, and the victim's boyfriend were college friends. On Saturday, July 25, 2009, they decided to go to Lake Lanier, where the parents of the victim's boyfriend owned a lake house.

---

[1] Because the present case was tried before January 1, 2013, the new Georgia Evidence Code does not apply to any of the evidentiary issues addressed in this opinion. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

They arrived at the lake house around 1:00 p.m. and went down to the dock by the lake, where they stayed for several hours. According to the victim, her boyfriend and Hammill brought two 24-packs of beer and a bottle of vodka with them to the lake house. While on the dock, everyone began drinking the beer, and the victim testified that her boyfriend and Hammill were drinking "a lot, pretty fast." The victim's boyfriend also got out the bottle of vodka and poured it into slices of watermelon, and everyone began to eat the watermelon "infused with vodka."

The parents of the victim's boyfriend who owned the lake house came down to the dock and also were drinking alcohol. The boyfriend's father owned two jet skis. When Hammill and the victim's boyfriend asked if they could take the jet skis out on the lake, the mother responded, "Absolutely not, they're not insured, and you've been drinking." But when the mother left the dock to go back to the lake house, the father gave them permission to ride the jet skis as long as they brought them "right back."

The victim, her boyfriend, and Hammill rode the jet skis out to a small island on the lake with a beach area, where they played horseshoes and continued to drink beer. After about 20 minutes, they decided to return to the lake house. The victim was driving one of the jet skis with her boyfriend as her passenger, while Hammill drove the other jet ski. According to the victim, even though the water was choppy,

Hammill was driving the other jet ski "ridiculously fast," was sticking out his tongue, making faces and "doing little silly signs" with his hands, and was swerving back and forth across the water near the victim and her boyfriend. At one point, Hammill came within "arm's length" of the victim and her boyfriend's jet ski, and the victim told her boyfriend, "[H]e's too close. Tell him to back off. It's freaking me out." The victim's boyfriend then waived his hand back at Hammill in an effort to get him to slow down.

As they continued back to the lake house on the jet skis, the victim's jet ski hit a wave, and her boyfriend fell off. The victim stopped her jet ski so that her boyfriend could swim over and get back on. While the victim's jet ski was stopped in the water, Hammill collided with it and struck the victim in the head, causing her to fall into the water unconscious. The collision occurred in a portion of the lake in Forsyth County.

The victim's boyfriend and Hammill flagged down a pontoon boat, and together with the boat owner they were able to get the victim into the boat and back over to the shore. A bystander on the shore called 911, and Forsyth County emergency response personnel were dispatched to the scene and transported the victim to the hospital, where she underwent two brain surgeries and remained unconscious for approximately two months as a result of the brain trauma she had suffered. The victim subsequently went through months of speech, occupational,

4

physical, and cognitive therapy. Ultimately, the victim returned to college, and she was able to recall the events that had transpired at the lake because she did not suffer any long-term memory problems.

While the victim was transported to the hospital, an officer assigned to the law enforcement section of the Georgia Department of Natural Resources ("DNR") who had been dispatched to the scene began his investigation of the collision and spoke with Hammill on a nearby dock. The DNR officer took photographs of the jet skis and video-recorded his investigation and interaction with Hammill using a "pin cam" that he wore. As a result of his investigation, including his examination of the damaged jet skis, the officer determined that Hammill had been traveling between 30 to 40 mph when he struck the rear side of the victim's jet ski. The officer further determined that Hammill collided with the victim's jet ski with such force that his jet ski traveled over the top of it and struck the victim directly in the head.

As part of his investigation, the officer also found an empty beer can on the jet ski driven by Hammill. Moreover, while speaking with Hammill, the officer noticed that he smelled strongly of alcohol, that his eyes were red and glassy, that his speech was slurred, and that he was unsteady on his feet. After obtaining Hammill's consent,

the officer performed several field sobriety tests for boaters approved by the United States Coast Guard for use in water-related environments: the horizontal gaze nystagmus ("HGN") test, the recitation of the alphabet and counting tests, and the hand-pat and finger dexterity tests.[2] Hammill exhibited six out of six clues of impairment on the HGN test, had trouble reciting the alphabet and counting backwards, and failed to follow the directions in performing the hand-pat and finger dexterity tests. The officer also asked Hammill to submit to a preliminary Alcosensor breath test, but he refused. Hammill admitted to the officer that he drank four or five beers that day before the collision, but he told the officer that he did not want anything in writing stating that the collision had been caused by his drinking because he did not feel that he had been impaired by his alcohol consumption.

Based on his training and experience, his observations of Hammill, and Hammill's performance on the field sobriety tests, the officer concluded that Hammill was under the influence of alcohol to the extent that it was less safe for him to operate the jet ski and placed him under arrest. The officer read the Georgia Implied Consent

---

[2] The officer testified that he did not perform the one-leg stand or walk-and-turn tests because a person's equilibrium can be affected by operating a watercraft to the extent that it impacts his or her performance on those two tests. The officer also noted that it can be difficult to find sufficiently level places to perform those two tests near a lake.

Warning for persons over the age of 21 to Hammill and requested that he take a State-administered breath test and blood test. According to the officer, he planned to take Hammill to the jail first for the breath test and, if the test was not positive for alcohol, then to the hospital for a blood test. Hamill initially did not respond to the officer's request but later refused to take the breath test on the Intoxilyzer 5000 at the jail. At that point, the officer decided not to take Hammill to the hospital for a blood test because "he had already refused the first test."

Hammill was indicted and tried before a jury on two counts of serious injury by vessel, one count of reckless operation of a vessel, and one count of operating a vessel while under the influence of alcohol. The State established the facts supporting its case as set out above through the testimony of the victim, the DNR officer, the emergency response personnel, and the hospital neurosurgeon who treated the victim. The State also introduced the photographs of the jet skis taken by the DHR officer and the video recording of the officer's interaction with Hammill, including Hammill's performance of the field sobriety tests and his refusal to take the Alcosensor breath test and the State-administered breath test at the jail.

In contrast, Hammill called as defense witnesses the victim's boyfriend, the boyfriend's parents, and the pontoon boat owner in an effort to show that he had not

been impaired by alcohol or recklessly operating the jet ski. Hammill also called a defense expert in field sobriety testing in an effort to cast doubt on the manner in which the DHR officer had performed the field sobriety tests. Hammill elected not to testify.

After hearing the conflicting testimony and viewing the photographs and video recording, the jury found Hammill guilty of the charged offenses. Hammill filed a motion for new trial, which the trial court denied, resulting in this appeal.

1. Challenging the sufficiency of the evidence, Hammill contends that his convictions for serious injury by vehicle must be reversed because the State failed to prove the essential element of proximate cause. According to Hammill, there was evidence that the victim was negligent on the day of the jet ski collision because she drank alcohol before driving her jet ski, she was driving fast despite the choppy condition of the water, and she stopped her jet ski suddenly after her boyfriend fell off of it. Hammill maintains that the victim's own negligence was an intervening cause that broke the chain of causation, relieving him of criminal liability for the victim's injuries resulting from the jet ski collision. We are unpersuaded.

> An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence in the case that the act or

8

omission played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act.

(Citation omitted.) *McGrath v. State*, 277 Ga. App. 825, 828-829 (1) (627 SE2d 866) (2006). In the criminal context, "as long as the defendant's negligence proximately caused the injury of another, the crime has been committed, even if there are other factors which also are proximate causes of the injury." *Baysinger v. State*, 257 Ga. App. 273, 273-274 (1) (570 SE2d 593) (2002). Hence, "it simply is not relevant that the victim was negligent unless the defendant's conduct did not substantially contribute to the cause of the injury." Id. at 274 (1). Moreover, it is well-established that proximate cause is ordinarily a question for the jury. *Dunagan v. State*, 283 Ga. 501, 505 (661 SE2d 525) (2008).

Here, the State presented evidence that Hammill struck the victim's jet ski directly from behind while traveling between 30 to 40 mph, such that Hammill's jet ski traveled over the top of the victim's jest ski and struck the victim directly in the head. There was no evidence that he made any attempt to turn or avoid the collision. Furthermore, the State presented evidence that Hammill was under the influence of alcohol when he was driving his jet ski, that he was following the victim's jet ski too

closely at a high rate of speed, and that he was sticking out his tongue, making faces, and gesturing with his hands rather than focusing on his surroundings. Given this trial record, the State clearly came forward with sufficient evidence to authorize the jury to find that Hammill's conduct substantially contributed to, and thus was the proximate cause of, the victim's injuries. See *Corbett v. State*, 277 Ga. App. 715, 717-719 (1) (b) (627 SE2d 365) (2006) (concluding that there was sufficient evidence that the defendant driver proximately caused the victim's death, where there was evidence that the defendant was under the influence of alcohol and failed to take any evasive action upon seeing the victim standing in the middle of a dark roadway).

2. Hammill further argues that the trial court erred in restricting his counsel's recross-examination of the DHR officer about whether he had refused a State-administered blood test. We disagree.

As previously noted, the DHR officer testified that he requested that Hammill take a State-administered breath test and blood test. According to the officer, Hammill initially did not respond to the request but later refused to take a breath test at the jail. Given that Hammill had refused the breath test, the officer chose not to transport him to the hospital for a blood test.

10

During cross-examination, defense counsel asked the officer if Hammill at any time had refused to take a blood test, and the officer responded, "He didn't need to; he had already refused the first test." On redirect examination, the prosecutor asked the officer additional questions relating to the issue of the blood test, and then on recross-examination, defense counsel again asked the officer if Hammill at any time had refused to take a blood test. The prosecutor objected to defense counsel's question on the ground that it had already been asked and answered, and the trial court sustained the objection, which Hammill now contends was reversible error.

A trial court has broad discretion in determining the scope of cross-examination and recross-examination. See *Hopson v. State*, 281 Ga. App. 520, 521 (1) (636 SE2d 702) (2006). In exercising its broad discretion in this area, a trial court is *"authorized to exclude cumulative questioning on matters that [have] already been covered." Littlejohn v. State*, 320 Ga. App. 197, 205 (4) (739 SE2d 682) (2013). Thus, the trial court is authorized to limit the scope of recross-examination if the same matter was already explored in defense counsel's cross-examination. See *Hopson v. State*, 281 Ga. App. 520, 522 (1) (a) (636 SE2d 702) (2006).

Based on these principles, the trial court did not abuse its discretion in this case. The question that defense counsel sought to ask the DHR officer on recross-

11

examination about the blood test had already been asked and answered during his cross-examination. Because any response to the question would have been cumulative in nature, the trial court acted within its discretion in sustaining the prosecutor's objection to the question and limiting the scope of the recross-examination of the officer. See *Hopson*, 281 Ga. App. at 522 (1) (a).

3. Hammill also maintains that the prosecutor improperly commented in the presence of the jury on his right not to testify and incriminate himself, and that the trial court should have granted him a new trial as a result. Again, we disagree.

During the cross-examination of the DHR officer, defense counsel attempted to inquire about a statement made by Hammill to the officer in which he asserted that his alcohol consumption was not the cause of the jet ski collision. The question was part of a series of questions by defense counsel aimed at showing that the officer had left certain exculpatory statements made by Hammill out of his arrest report even though the statements could be heard on the video recording from the officer's "pin cam." The prosecutor objected to the question, arguing that Hammill's statement was self-serving and that if Hammill "wants it in he can come testify about it." The trial court overruled the prosecutor's objection to the question on the ground that Hammill's statement was already in evidence, given that the video recording in which

12

the statement could be heard had previously been introduced into evidence and played for the jury.

Hammill argues that the prosecutor's remark that if he "wants it in he can come testify about it" was an improper comment on his right not to testify and incriminate himself. Notably, however, defense counsel did not object to the prosecutor's remark at trial. Any objection to the remark thus has been waived for purposes of appeal. See *Thomas v. State*, 284 Ga. 647, 648 (2) (670 SE2d 421) (2008); *Landers v. State*, 270 Ga. 189, 190-191 (2) (508 SE2d 637) (1998).

> In any event, the prosecutor's remark was not improper. Under Georgia law,
>
> a prosecutor may not comment upon a defendant's failure to testify at trial. A criminal defendant alleging a violation of this rule establishes reversible error if the prosecutor's manifest intention was to comment on the accused's failure to testify or the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.

(Citations and punctuation omitted.) *Lacey v. State*, 288 Ga. 341, 344 (4) (a) (703 SE2d 617) (2010).

Reading the challenged remark by the prosecutor in context, we conclude that the remark was not intended as a comment on Hammill's decision not to testify and

13

was unlikely to be interpreted by the jury as such a comment. Rather, the prosecutor's remark was made as part of an evidentiary objection and argument between counsel over whether Hammill's alleged self-serving statement was admissible if he elected not to testify. See generally *Mathis v. State*, 265 Ga. App. 541, 544 (2) (c) (594 SE2d 737) (2004) ("Self-serving declarations are inadmissible hearsay unless the declarant testifies and is subject to cross-examination. The defendant is allowed to declare his innocence in court; he is not allowed to avoid this opportunity by pre-trial declarations of innocence.") (citations and punctuation omitted).[3] For this reason, the prosecutor's remark is reasonably construed as nothing more than a comment pertaining to the admissibility of certain evidence, and, as such, provides no basis for a new trial in this case. See *Locke v. State*, 238 Ga. App. 705, 707-708 (2) (521 SE2d 587) (1999).

---

[3] It is unlikely that the exclusion of "self-serving" statements established by Georgia precedent survived the adoption of the new Evidence Code. See OCGA §§ 24-8-803; 24-8-804; *State v. Hodges*, 291 Ga. 413, 423 (2), n.3 (728 SE2d 582) (2012) (Nahmias, J., concurring specially) (pointing out that "the blanket policy against 'self-serving' statements, established by our case law, may not survive" adoption of the new Evidence Code). See also Paul S. Milich, Georgia Rules Of Evidence § 16:9 (2013) (noting that the new Evidence Code "leaves no room for excluding hearsay that otherwise qualifies for an exception simply because it is 'self-serving.'").

14

4. Hammill contends that the trial court erred in denying his motion for mistrial or in failing to give a curative instruction when the prosecutor allegedly made an improper remark in closing argument regarding the inference that could be drawn from his refusal to submit to a State-administered breath or blood test. We are unpersuaded.

Under Georgia law, the refusal of a criminal defendant to submit to a State-administered breath, blood, or urine test for determining alcohol or drug content "itself may be considered as positive evidence creating an inference that the test would show the presence of the prohibited substance." *Brooks v. State*, 187 Ga. App. 194, 195 (1) (369 SE2d 801) (1988). But the refusal to take such a test does not, "by itself," support an inference of impairment. *Baird v. State*, 260 Ga. App. 661, 663 (1) (580 SE2d 650) (2003). See *Walker v. State*, 239 Ga. App. 831 (521 SE2d 861) (1999); *Brinson v. State*, 232 Ga. App. 706, 707 (503 SE2d 599) (1998) (physical precedent only). In contrast, the refusal to take the State-administered test, "*together with other evidence*," can support an inference that the defendant was an impaired driver. (Emphasis supplied.) *Jones v. State*, 273 Ga. App. 192, 194 (1) (b) (614 SE2d 820) (2005). See *Hazley v. State*, 289 Ga. App. 558, 559-560 (657 SE2d 628) (2008);

15

*Massa v. State*, 287 Ga. App. 494, 495 (1) (651 SE2d 806) (2007); *Hoffman v. State*, 275 Ga. App. 356, 358 (1) (620 SE2d 598) (2005); *Walker*, 239 Ga. App. at 831.

During closing argument, defense counsel argued that the "only inference" that could be drawn from Hammill's refusal to take the State-administered test was "that he had alcohol in his system." In response, in his final closing argument, the prosecutor argued:

> What other evidence of impairment do we have? He refused the tests. All right, [Defense Counsel] sat here and told you that you could only use the refusal of the test as evidence that there was alcohol in his system, and that, ladies and gentlemen, is not the case. It absolutely is not.
>
> The judge will instruct you that methods of proving this offense that the driver was impaired, [that] the Defendant's ability to drive was impaired[,] include the refusal to take field sobriety tests and the . . . breath or blood tests. Defense counsel objected at that point and moved for a mistrial on the ground that the prosecutor had misstated the applicable law. The trial court overruled the objection, and the prosecutor continued his argument:
>
> [Hammill] refused the tests. That is evidence of impairment. It's circumstantial evidence *and it needs to be taken with other evidence in order to come to a conclusion of impairment*, but it is evidence.

16

(Emphasis supplied.)

Hammill argues on appeal that the prosecutor misstated the law regarding the inference that could be drawn by his refusal to submit to a State-administered test for the presence of alcohol, and that the trial court thus should have sustained his objection and granted a mistrial or issued a curative instruction. "In passing upon objections or motions on account of improper argument, the judge is vested with a sound discretion, and his ruling thereon will not work a new trial unless it manifestly appears that his discretion was abused." (Citation and punctuation omitted.) *Bruce v. State*, 142 Ga. App. 211, 214-215 (6) (235 SE2d 606) (1977). Furthermore, "[i]t is fundamental that harm as well as error must be shown for reversal" based on an alleged improper comment made by a prosecutor during closing argument. (Punctuation and footnote omitted.) *Wright v. State*, 319 Ga. App. 723, 731 (3) (a) (738 SE2d 310) (2013).

Here, following defense counsel's objection, the prosecutor ultimately clarified to the jury that Hammill's refusal to take a State-administered test "need[ed] to be taken with other evidence in order to come to a conclusion of impairment." This clarification by the prosecutor was consistent with our case law reflecting that a defendant's refusal to take a State-administered test "together with other evidence

17

will support an inference that he was an impaired driver." (Citation and punctuation omitted.) *Hazley*, 289 Ga. App. at 559-560. See *Massa*, 287 Ga. App. at 495 (1); *Hoffman*, 275 Ga. App. at 358 (1); *Jones*, 273 Ga. App. at 194 (1) (b); *Walker*, 239 Ga. App. at 831. In light of this clarification of the law by the prosecutor, we conclude that any error in the earlier statements by the prosecutor was rendered harmless.[4] Accordingly, we find no prejudicial error.

5. Hammill also asserts that the trial court erroneously charged the jury on the inference that could be drawn from his refusal to submit to a State-administered breath or blood test. According to Hammill, the multi-paragraph charge was internally contradictory and "must have confused the jury." We do not agree.

The jury charge at issue here is the same charge (albeit adapted for boating) that was given in *Crusselle v. State*, 303 Ga. App. 879, 882 (2) (694 SE2d 707) (2010). In that case, we concluded that the charge, when read and considered as a whole, "substantially present[ed] the issues in such a way as [was] not likely to confuse the jury" and provided no basis for reversal. (Punctuation and footnote

---

[4] We note that although the jury receives the law from the trial court, counsel may read and comment on the law that will be charged to the jury as part of closing argument. See *Amaya v. State*, 308 Ga. App. 460, 464 (3) (708 SE2d 28) (2011).

18

omitted.) Id. at 883 (2) (b). In light of our decision in *Crusselle*, we conclude that the trial court did not err in its charge to the jury.

*Judgment affirmed. Boggs and Branch, JJ., concur*.