**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and BROWN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 2, 2020**

# In the Court of Appeals of Georgia

A20A1141. JOHNSON v. THE STATE.

BROWN, Judge.

Lajayvayon Johnson appeals from his convictions of home invasion in the first degree, aggravated assault, possession of a firearm during the commission of a felony, possession of a handgun by a person under the age of 18, possession of marijuana more than an ounce, possession of marijuana with intent to distribute, criminal trespass, theft by receiving stolen property, and theft by taking.[1] Johnson contends that insufficient evidence supports his convictions of home invasion and theft by receiving and that the trial court erred by failing to grant a mistrial or give a curative instruction after the State made a misstatement of law during closing argument. For

---

[1] The jury found Johnson not guilty of a second count of theft by receiving.

the reasons explained below, we reverse Johnson's conviction for theft by receiving stolen property and affirm his remaining convictions.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence

> is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the record shows that the victim testified that she awoke in her home to the sound of glass breaking, jumped out of bed, went to the bathroom next to her bedroom, and called her mother. She called 911 after being instructed to do so by her mother. While she was on the phone with the emergency dispatcher, she heard someone say, "you need to check all of the doors, make sure nobody's in here." She backed away from the locked bathroom door "[a]nd somebody grabbed the door. [She didn't] know who grabbed for the door . . . and heard a voice say okay, you need to kick it open. And then that's when the door came down. . . ." The victim saw two men, one of whom was holding a gun pointed at her chest and whose last name she

2

believed was "Zellner." When she did not answer their question of who was on the phone, the two men ran away, leaving through the window they had already broken. The victim noticed that the man who did not have the gun had a book bag. After the men left in the direction of the woods near her home, she discovered that an iPhone and watch were missing from her bedroom.

A police investigator, who was located two to three miles away from the victim's subdivision, responded when he heard a radio dispatch about the home invasion. Based upon the dispatch stating that several suspects had fled into the woods behind the property, the investigator and his partner headed to the unfinished portion of the subdivision that overlooks a wooded area. He saw three Black men walking briskly through the woods, the tallest of which was wearing a "light colored book bag." Because the men matched the description provided in the dispatch, he radioed other officers to advise the men's direction of travel. As other officers came within 50-75 yards of the men, "they either became aware of the officers or [the investigator on the overlook] and started running in the same direction that they were walking."

An officer in the woods testified that he saw the three suspects — one with a book bag — and "gave loud verbal commands, police, for them to stop. At which

3

time they abandoned the book bag and began fleeing on foot." Through the use of a canine, the police apprehended two of the suspects, Johnson and Dyquavious Zellner. The third suspect, Kendrell Joseph, came forward after he learned the police were looking for him. A search of the book bag revealed the watch and iPhone taken from the victim's home, as well as a Glock .9mm, marijuana, plastic bags, a scale, and additional cell phones. The owner of the Glock .9mm found in the book bag testified that the gun was stolen from his truck two months before the home invasion. The truck was located in the same city as the location of the home invasion.

Following his arrest, Johnson told a police officer that he planned to "hit" the house for guns with Zellner and Joseph. Johnson stated that they took a gun with them in case they ran into anybody in the house and needed to rob those present at gunpoint.

Joseph testified at Johnson's trial that the three men planned the home invasion in order to steal guns from the victim's house to either "sell" or "keep." When they arrived at the home, Zellner knocked on the front door and determined that "everything was good." Joseph explained that Zellner knocked on the door to determine if anyone was home because they did not want to confront anyone in the house; their plan was to do it when no one was home, and they did not intend to go

4

inside and harm someone. Johnson broke a window in the home and entered first. When Johnson entered the home, he was carrying a firearm, which he later gave to Zellner with instructions to check the rooms.

1. Johnson contends that insufficient evidence supports his conviction for home invasion in the first degree because the State failed to present evidence showing that he entered the home with the intent to commit a forcible felony. He asserts that the evidence shows only that he intended to enter the home with the intent to commit a theft of the guns rather than the aggravated assault charged in the indictment. We disagree.

The State charged Johnson with committing home invasion for entering the home occupied by the victim without authority and with the intent to commit aggravated assault while in possession of a handgun.

> The plain and unambiguous language of OCGA § 16-7-5 (b) makes clear that to commit the crime of home invasion in the first degree, a perpetrator must: (1) make an unauthorized entry into a legally occupied dwelling house; (2) do so with the intent to commit a forcible felony therein; and (3) do so while in possession of a deadly weapon or other instrument capable of causing serious bodily injury.

(Footnote omitted.) *Mahone v. State*, 348 Ga. App. 491, 494 (2) (823 SE2d 813) (2019). Aggravated assault is a forcible felony. See *Reyes v. State*, 250 Ga. App. 769, 770 (552 SE2d 918) (2001). With regard to Johnson's intent when he entered the home, "[i]t is not necessary for the [S]tate to show that [Johnson] expressed an intent to [commit an aggravated assault] in so many words, or declared a purpose to carry the intent into effect, for the jury to arrive at the conclusion he so intended. The intention may be gathered from the circumstances of the case as proved." (Citation and punctuation omitted.) *Rucker v. State*, 177 Ga. App. 779, 781 (2) (341 SE2d 228) (1986). In this case, Johnson's admission that he and the other men took a gun with them in case they ran into anybody in the house provides sufficient evidence of his intent to commit an aggravated assault at the time he entered the victim's home.

2. Johnson asserts that the State presented insufficient evidence showing that he knew that the firearm found in the backpack was stolen. We agree.

Under OCGA § 16-8-7 (a), "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen . . . ." In this case, the State charged Johnson with *receiving* stolen property that he knew or should have known was stolen. Thus, proof that Johnson knew or should have known that the firearm at issue

6

was stolen at the time he received it was an essential element of the offense. See

*Daughtie v. State*, 297 Ga. 261, 262 (2) (773 SE2d 263) (2015). "Proof of possession,

alone, of recently stolen property is not sufficient to establish the essential element

of the offense of theft by receiving stolen property that the possessor knew or should

have known that the property was stolen." *Wells v. State*, 268 Ga. App. 62 (1) (601

SE2d 433) (2004). However, knowledge that goods are stolen "may be inferred where

the circumstances would excite suspicion in the minds of ordinarily prudent persons."

(Citation and punctuation omitted.) *Thomas v. State*, 270 Ga. App. 181, 182 (1) (b)

(606 SE2d 275) (2004).

> The circumstances, the time, the secrecy, all the transactions before, at
> the time and afterwards, may be brought to bear upon what was the
> knowledge of the receiver; and if from all these the jury can conclude
> that the receiver did have good reason, as a reasonable person, to believe
> or suspect that the goods were stolen, they may well conclude, if he did
> not inquire and investigate before he received them, that he had
> knowledge, such as the law will charge him with, of the character of the
> goods and of the person from whom he received, as one who had stolen
> them.

(Citation and punctuation omitted.) *Birdsong v. State*, 120 Ga. 850, 853 (3) (48 SE 329) (1904), disapproved on other grounds, *Selvidge v. State*, 252 Ga. 243, 244-245 (313 SE2d 84) (1984).

The State asserts that it produced sufficient evidence to support Johnson's conviction because "Johnson could not have purchased the gun legally due to his age," and the stated purpose of the subsequent home invasion was to steal guns to sell or keep. It also asserts that Johnson's conduct in abandoning the backpack and fleeing as the police responded also supports the inference that he knew the gun was stolen. We are unpersuaded.

While flight or abandonment of stolen property can provide circumstantial evidence of guilty knowledge, *Mitchell v. State*, 312 Ga. App. 293, 296 (1) (718 SE2d 126) (2011), the other items found in the backpack (property stolen in the home invasion and marijuana) dilute the value of such evidence in this case to the point that it cannot be said that such evidence "exclude[s] every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.[2] See *Anderson v. State*, 225

_____

[2] In its entirety, this Code section provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.

Ga. App. 727, 728 (484 SE2d 783) (1997) (finding insufficient evidence to support conviction of cocaine with intent to distribute when defendant's efforts to elude capture were "equally consistent with a theory that [defendant] attempted to evade police because he was in possession of illegal drugs or because his license was suspended"). Compare *Duncan v. State*, 278 Ga. App. 703, 707 (1) (c) (629 SE2d 577) (2006) (defendant's unprovoked statement to uncle that he was hiding items in trash can because "'he didn't want the police to think that he had stole'" them, taken together with defendant's concealment of the items, supported inference that he knew or should have known the items were stolen). The fact that Johnson could not legally purchase the gun due to his age "does not exclude the possibility that the weapon may have been given away or sold 'on the black market.'" (Citation and punctuation omitted.) *White v. State*, 283 Ga. 566, 568 (2) (662 SE2d 131) (2008) (finding insufficient evidence to support theft by receiving handgun labeled for law enforcement use). Finally, we cannot agree that Johnson's motive to steal guns in the home invasion shows that he knew or should have known at the time he received the gun that it had been stolen. Accordingly, we reverse Johnson's conviction for theft by receiving stolen property.

9

3. Lastly, Johnson contends that this Court should grant him a new trial based upon the trial court's failure to grant a mistrial or issue a curative instruction after the State made a misstatement of law during its closing argument. We disagree.

The record shows that Johnson's counsel argued the following during his closing:

> The State chose not to indict this as a burglary; they chose to indict it as a far more serious crime, a home invasion.Why did they do that? I can't speak for them; but I can submit to you why they did it is because they did not want the option of you convicting him for what he really did, which was burglary.
>
> . . .
>
> Had they charged with this burglary I submit to you we wouldn't even be here today because I would not be up here telling you that he didn't commit a burglary. Now, the reason why home invasion is far more serious than burglary is because you're intending to commit a forcible felony on an individual that lives in the home.

In its closing argument, the State responded:

> Now, the defendant wants to make this argument about burglary; why didn't we charge [him] with burglary. However, the facts don't support that. The defendant instructed Zellner to check for locked doors.
> . . .
> Home invasion was designed to be burglary with a firearm, and that's what we have in this case.

Johnson's counsel objected "to the statement of the law there; that's not what the law says." The trial court immediately stated, "Well, ladies and gentleman, I'll give you the law. The lawyers are permitted to comment on what they anticipate that I'll say to you, but you'll get the law from me." The State then continued with its closing argument. At the end of the State's closing argument and before the trial court charged the jury, Johnson's counsel moved for a mistrial based upon the misstatement of law, and in the alternative, for a corrective instruction.

The trial court denied the motion for mistrial and stated that "it's curative enough for me to give the instructions of the law as they actually exist." It then instructed the jury that the State had the burden to "prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt," read the indictment charging Johnson with committing home invasion by entering the home with the intent to commit a forcible felony, defined the crime of home invasion to include entering the home with the intent to commit a forcible felony, and defined aggravated assault as a felony. At the conclusion of the trial court's charge to the jury, Johnson's counsel did not renew his motion for a mistrial or seek any additional curative instructions. In addition to these charges, the

11

trial court had previously charged the jury on the first day of trial that it would instruct the jury on the specific rules of law that apply to the case.

"Whether to declare a mistrial is a question committed to the discretion of the trial judge, and the denial of a mistrial is reversible error only if it appears that a mistrial was essential to preserve the defendant's right to a fair trial." (Citation and punctuation omitted.) *Battle v. State*, 305 Ga. 268, 276 (3) (824 SE2d 335) (2019). "Furthermore, it is fundamental that harm as well as error must be shown for reversal based on an alleged improper comment made by a prosecutor during closing argument." (Citation and punctuation omitted.) *Hammill v. State*, 327 Ga. App. 580, 588-589 (4) (758 SE2d 336) (2014). We conclude that any error here was harmless.

Following Johnson's objection, the trial court instructed the jury that it would "get the law from [the court]" and not the attorneys and correctly charged the jury on home invasion in the first degree during its final jury instructions, "and we presume that jurors follow the law." *Venturino v. State*, 306 Ga. 391, 400 (4) (830 SE2d 110) (2019) (prosecutor's misstatement of law during closing argument was harmless error in light of court's instruction to jury upon defense's objection that the court would be charging on what the law is and the court's later correct jury charge on the law). Accordingly, this enumeration of error fails.

12

*Judgment affirmed in part and reversed in part. McFadden, C. J., and Doyle, P. J., concur.*