**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 30, 2012**

# In the Court of Appeals of Georgia

A12A1471. SMITH v. THE STATE.

RAY, Judge.

After a jury trial, Nicole Smith was convicted of two counts of first degree homicide by vehicle,[1] one count of forgery,[2] one count of reckless driving,[3] and one count of giving a false name.[4] Smith appeals the denial of her motion for new trial, contending that the evidence was insufficient to sustain her conviction and that the trial court erred in refusing to allow her to impeach a prosecution witness with evidence of prior felony convictions and pending charges, erred in allowing

---

[1] OCGA § 40-6-393 (a).

[2] OCGA § 16-9-1 (b).

[3] OCGA § 40-6-390.

[4] OCGA § 16-10-25.

prejudicial and irrelevant testimony, erred in allowing the admission of prejudicial character evidence, and erred in improperly charging the jury. For the reasons that follow, we affirm.

1. The evidence was sufficient to support the guilty verdict as to all charges. When reviewing a criminal conviction,

> the evidence must be construed in a light most favorable to the verdict, and [Smith] no longer enjoys a presumption of innocence. In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt.[5]

So construed, the evidence shows that on April 9, 2006, Smith had been spending the night with her sister, Falisha Scott, in Lithonia. While Scott was sleeping, Smith borrowed Scott's Ford Trailblazer SUV without her knowledge or permission.

At approximately 3:00 a.m., Smith was driving the Trailblazer northbound on I-285 at a high rate of speed when she struck the rear of a slower moving Nissan Sentra occupied by Constance Daniel and Charisma Sanders. Smith never applied her

---

[5] (Citation omitted.) *Nelson v. State*, ___ Ga. App. ___ (731 SE2d 770) (2012).

2

brakes before the collision and, in fact, had been accelerating at the time of impact. The impact sent the victims' Sentra into the median wall, where it rebounded and spun back out into oncoming traffic. A Lexus SUV then hit the Sentra head on, killing Daniel and critically injuring Sanders. Sanders was taken to a hospital immediately after the crash, but she died from her injuries 20 days later.

Jimmy Lottie, who had been driving alongside the Sentra at the time of the accident, testified that he was driving northbound in the far right lane of I-285 when he looked in his rear-view mirror and saw a vehicle approaching at a high rate of speed. He observed the speeding vehicle crash into the rear of the Sentra, sending it into the median wall and back out into traffic. Lottie testified that the Sentra's headlights, which had been functioning normally prior to the accident, were knocked out when the Sentra collided with the median wall. The Sentra came to a rest facing oncoming traffic with its headlights out. Lottie pulled over and ran across the interstate to the median wall to render assistance, but another car struck the Sentra head on before he could reach it.

Jason Ouimette was driving northbound on I-285 in the second lane from the median wall when he observed smoke, debris, and what he believed to be a "chunk of metal" just ahead in the lane closest to the median wall. The chunk of metal was

3

the Sentra. Darius Vaughn was driving a Lexus SUV in the left lane beside Ouimette. Both Ouimette and Vaughn slammed on the brakes, but only Ouimette managed to avoid hitting the Sentra. Vaughn testified that he did not see the Sentra until he was right up on it. Vaughn further testified that he could not avoid hitting the Sentra because it was blocking the two left lanes of the interstate and Ouimette's car was to his right.

Officer C. E. Flood, a DeKalb County police officer, was the first to respond to the accident scene. Officer Flood talked to the witnesses present and ascertained that the Trailblazer driven by Smith had initiated the accident by hitting the rear of the Sentra. When Smith was questioned by law enforcement at the scene, she admitted that she was the driver of the Trailblazer but identified herself as "Falisha Scott." When Smith was taken to the police station to be questioned further about the accident, she was given a Miranda form and advised of her rights. Smith signed her name as "Falisha Scott" on the Miranda form, as well as on her written statement.

During the subsequent investigation of the accident, Donald Shaver, an accident reconstruction expert, retrieved crash data from the Trailblazer's sensing diagnostic module (SDM). The SDM records the change in the velocity of the vehicle resulting from the initial impact of the crash. The SDM also provides the speed of the

vehicle during the last five seconds before the crash and indicates whether the brakes were applied during that time. The data retrieved by Shaver indicated that the Trailblazer was accelerating from 87 m.p.h to 91 m.p.h. during the last five seconds before impact, and that the brakes were never applied. Shaver testified that his analysis of the SDM data, combined with the physical evidence on the vehicles, witness statements, photos, and the investigative reports and diagrams of the accident, indicate that the Trailblazer was moving at the speed of 90 m.p.h. and approximately 30 m.p.h. faster than the Sentra at the time of impact.

Detective Charles Thomas, the DeKalb County police officer who investigated the accident, testified that he received a phone call from Scott the day after the accident. It was at that time that he discovered that Smith had taken Scott's Trailblazer without her permission and had used Scott's name.

Smith did not testify at trial, but relied on her own accident reconstruction expert who testified that the accident could not have occurred in the manner described by the witnesses, police officers, and the State's accident reconstruction experts.

This evidence was sufficient for the jury to reject Smith's claims that her expert's testimony proved that she was not driving recklessly and that most of the

5

damage to the victims' car was caused when it struck the median wall,[6] and to find that Smith was guilty of two counts of first degree vehicular homicide,[7] one count of reckless driving,[8] one count of forgery,[9] and one count of giving a false name.[10]

2. Smith contends that the trial court erred in refusing to allow her to impeach the State's witness, Jimmy Lottie, with his 1995 and 1998 drug convictions.

Pursuant to OCGA § 24-9-84.1 (a) (1),

---

[6] See *Shy v. State*, 309 Ga. App. 274, 278 (4) (709 SE2d 869) (2011) ("whether [Smith's] manner of driving under the circumstances demonstrated a reckless disregard for the safety of others is a question that is reserved for the jury") (citation omitted); *Hamilton v. State*, 281 Ga. 501, 502 (1) (640 SE2d 28) (2007) (it is for the jury to determine the credibility of witnesses, as well as the weight to be accorded the expert testimony).

[7] "Any person who, without malice aforethought, causes the death of another person through the violation of OCGA § 40-6-390, commits the offense of homicide by vehicle in the first degree[.]" OCGA § 40-6-393 (a).

[8] "Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." OCGA § 40-6-390 (a).

[9] "A person commits the offense of forgery in the first degree when with the intent to defraud . . . she knowingly makes . . . any writing, other than a check, in a fictitious name or in such manner that the writings as made . . . purports to have been made by another person . . . and utters or delivers such writing." OCGA § 16-9-1 (b).

[10] "A person who gives a false name . . . to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to [her] identity . . . is guilty of a misdemeanor." OCGA § 16-10-25.

[f]or the purpose of attacking the credibility of a witness . . . [e]vidence that a witness has been convicted of a crime shall be admitted if the crime was punishable by . . . imprisonment of one year or more under the law under which the witness was convicted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the witness.[11]

However, evidence of such a conviction is not admissible

if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness . . . from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.[12]

Finding that Lottie's 1995 drug conviction occurred more than ten years ago and that its probative value did not substantially outweigh its prejudicial effect, the trial court refused to allow evidence of the conviction for impeachment purposes. In doing so, the trial court noted that it did not believe that a drug conviction was relevant to Lottie's testimony in his capacity as an eyewitness to an automobile

---

[11] We note that this statute has been repealed effective January 1, 2013, and will be replaced by OCGA § 24-6-609.

[12] OCGA § 24-9-84.1 (b).

7

accident.[13] Further, the importance of Lottie's credibility was minimized by the fact that his testimony merely corroborated other overwhelming evidence regarding how the accident occurred. We find that the trial court did not abuse its discretion in finding Lottie's 1995 conviction inadmissible under OCGA § 24–9–84.1 (b).[14]

With regard to Lottie's 1998 drug conviction, the trial court initially applied the wrong standard for determining the admissibility of this conviction. Applying the analysis set forth in OCGA § 24–9–84.1 (b), the trial court stated that the probative value of the 1998 conviction did not "substantially" outweigh its prejudicial effect. However, the 1998 conviction was not outside the ten-year time limitation because Lottie had been released from prison seven years before Smith's trial.[15] Thus, the

---

[13] See *Crowder v. State*, 305 Ga. App. 647, 650 (2) (700 SE2d 642) (2010) (prejudicial effect of victim's prior drug conviction outweighed any probative value, and thus evidence of victim was inadmissible to impeach victim in prosecution for aggravated assault).

[14] *Clay v. State*, 290 Ga. 822, 838 (3) (B) (725 SE2d 260) (2012) (although trial court must provide "on-the-record finding of the specific facts and circumstances upon which it relies in determining that the probative value of a prior conviction that is more than ten years old substantially outweighs its prejudicial effect before *admitting* evidence of the conviction for impeachment purposes under OCGA § 24-9-84.1 (b)," no such findings are required when the trial court refuses to admit such evidence) (emphasis supplied).

[15] OCGA § 24-9-84.1 (b).

8

appropriate standard for the admissibility of this conviction, as set forth in OCGA § 24–9–84.1 (a) (1), is whether the probative value merely outweighs its prejudicial effect. However, the trial court clarified its ruling and applied the correct standard in its order denying Smith's motion for new trial.[16] We find no error.

3. Smith argues, and the State concedes, that the trial court erred in refusing to allow Smith to cross-examine Lottie about his pending drug charge in Indiana. However, because we find that the error did not harm Smith's defense, we affirm.

Smith was permitted to cross-examine Lottie outside the presence of the jury regarding his pending charge of possession of cocaine in Indiana. Smith attempted to elicit testimony that Lottie may have been testifying favorably towards the State because he hoped that it may have some beneficial effect on the disposition of the pending drug charge. However, Lottie stated unequivocally that he had no hope of benefitting from providing testimony in this case. The trial court ruled that Smith

---

[16] See *Carter v. State*, 303 Ga. App. 142, 146-147 (2) (692 SE2d 753) (2010) (permissible for trial court to make findings on evidence admissibility required by OCGA § 24-9-84.1 in its motion for new trial order); *Hogues v. State*, 313 Ga. App. 717, 719 (2) (a) (722 SE2d 420) (2012) (permissible for trial court to amend the balancing test it applied to conform with that required by OCGA § 24-9-84.1 in its order on motion for new trial).

would not be allowed to cross-examine Lottie regarding the subject in front of the jury, and Smith objected.

On appeal, Smith contends that this limitation on her cross-examination of Lottie prevented her from showing that Lottie had a reason to be biased against her, thereby impeaching his credibility. "[T]he constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to [a] harmless-error analysis."[17] In determining whether a defendant suffered harm, we examine factors such as

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.[18]

At trial, Lottie's testimony regarding his observation of the speed of Smith's vehicle and its collision with the victims' car was corroborated by the police officers' analysis of the accident scene, the physical evidence on the vehicles involved, the

---

[17] (Citations and punctuation omitted.) *Hawkins v. State*, 316 Ga. App. 415, 418 (2) (a) (729 SE2d 549) (2012).

[18] Id. at 419 (2) (a).

10

data retrieved from the Trailblazer's SDM, and investigations of the State's accident reconstruction experts. Thus, there was evidence independent of Lottie's testimony that was sufficient to support the jury's conviction of Smith on the charges arising out of the collision. Moreover, the trial court allowed Smith's counsel to cross-examine Lottie for the purposes of impeachment with respect to an unrelated conviction in Indiana for giving false information.[19] Given these facts, any error by the trial court in limiting Lottie's testimony did not harm Smith.[20]

4. Smith contends that the trial court erred by allowing Marva Peters, the mother of victim Charisma Sanders, to testify about the extent of her daughter's injury and the length of her hospital stay and to introduce a photograph that Peters took of her daughter as she lay injured in the hospital shortly after the accident. Smith contends that the testimony and photograph were irrelevant and prejudicial.

---

[19] See *Fields v. State*, 285 Ga. App. 345, 346-347 (3) (646 SE2d 326) (2007) (trial court's error in barring cross-examination of a witness about pending charges for purpose of exploring bias was harmless when witness' credibility was put in doubt by another witness).

[20] See *Smith v. State*, 284 Ga. 599, 609 (4) n. 21 (669 SE2d 98) (2008) (constitutional error does not require reversal of a criminal conviction if the record on the whole shows it harmless beyond a reasonable doubt).

Generally, photographs of the extent and nature of a victim's wounds are material and relevant, regardless of whether the cause of death is disputed.[21] Such photographs are not objectionable merely because other evidence may have been presented to show the extent of the victim's injuries.[22] A trial court exercises its discretion in admitting photographic evidence, and we will not reverse the court's ruling absent an abuse of discretion.[23]

Here, because no autopsy was performed and because the defense refused to stipulate to the causation of Sanders' death, both Peters' testimony and the photograph were relevant to establish that Sanders died as a result of the injuries she sustained in the collision. The State was required to prove that Smith caused the death through her reckless driving,[24] and the severity of Sanders' injuries and her subsequent death was relevant to the State's case. The trial court, therefore, did not err in admitting the testimony and photograph.[25]

---

[21] *Smith v. State*, 280 Ga. 490, 492 (2) (629 SE2d 816) (2006).

[22] *Maxwell v. State*, 250 Ga. App. 628, 629 (2) (552 SE2d 870) (2001).

[23] See *Morris v. State*, 276 Ga. App. 775, 778 (3) (624 SE2d 281) (2005).

[24] OCGA § 40-6-393 (a).

[25] See *Taylor v. State*, 304 Ga. App. 573, 576 (2) (b) (696 SE2d 498) (2010) (post-collision photographs depicting victims' injuries were relevant and admissible

5. Smith contends that the trial court erred in allowing the State to introduce the testimony of Smith's sister, Falisha Scott, who testified that Smith had driven the Trailblazer without permission on the night of the accident. Smith contends that such testimony was irrelevant and prejudicial. Because we find that the trial court did not abuse its discretion, we disagree.

The "[a]dmission of evidence is a matter committed to the sound discretion of the trial court, and the trial court's evidentiary decisions will not be disturbed on appeal absent an abuse of discretion."[26] In general, "the circumstances connected with a defendant's arrest may be admitted into evidence, even if those circumstances incidentally place the defendant's character in issue. However, such evidence still

---

at defendant's trial for vehicular homicide to show that defendant caused victims' deaths through his reckless driving); *Bailey v. State*, 261 Ga. App. 291, 295 (6) (582 SE2d 487) (2003) (trial court enjoys broad discretion in balancing probative and prejudicial nature of crime scene photographs); *Maxwell*, supra at 629 (2) ("Photographs which are relevant to any issue in the case are admissible although they will have an effect upon the jury which the defendant feels is damaging to him").

[26] (Citation and punctuation omitted.) *Askew v. State*, 310 Ga. App. 746, 747 (1) (713 SE2d 925) (2011).

must be shown to be relevant."[27] Further, "[t]he State is permitted to present evidence of [Smith's] possible motive for committing a crime, and such relevant evidence is not rendered inadmissible because it may incidentally place [Smith's] character into evidence."[28]

Prior to Scott taking the witness stand, the trial court conducted a conference with counsel outside the presence of the jury regarding the substance and admissibility of Scott's testimony. Smith contended that Scott's testimony regarding Smith's unauthorized use of Scott's car and name would be irrelevant and overly prejudicial. The State argued, and the trial court agreed, that Scott's testimony regarding Smith's unauthorized use of her name was relevant to prove the State's case regarding the offenses of forgery and giving a false name, and that her testimony regarding Smith's unauthorized use of her car was relevant to show the possible motive for Smith's reckless manner of driving because it was possible that, since Smith did not have permission to use the car, she was "trying to get where she's going, and get back before Falisha would realize that the car was gone." We find that

---

[27] (Citations omitted.) *Rucker v. State*, 291 Ga. 134, 136-137 (2) (728 SE2d 205) (2012).

[28] Punctuation and footnote omitted.) *Donald v. State*, 312 Ga. App. 222, 229 (4) (d) (718 SE2d 81) (2011).

14

the trial court did not abuse its discretion in finding that the testimony was relevant and admissible.

6. Smith contends that the trial court erred in denying her motion for mistrial after the State's witness, Detective Thomas, improperly put Smith's character into evidence. We disagree.

As a threshold matter, we note that

the decision to deny a mistrial is within the trial court's discretion, and we will not reverse it unless the grant of a mistrial is necessary to preserve the right to a fair trial. And in reviewing the trial court's decision, this [C]ourt may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety.[29]

During the trial, the prosecutor questioned Detective Thomas about the circumstances surrounding his discovery that Smith was not Falisha Scott, contrary to what Smith had told officers at the time of her arrest. The prosecutor asked Detective Thomas whether Scott seemed surprised when she was informed that he'd spoken to another woman who was impersonating her. Detective Thomas responded

---

[29] (Punctuation and footnotes omitted.) *Tolbert v. State*, 313 Ga. App. 46, 56 (4) (720 SE2d 244) (2011).

15

that Scott "wasn't surprised that her sister used her name. She stated she'd done that before." Defense counsel objected, and the trial court immediately instructed the jury to disregard the statement, stating that the response was outside the scope of the question. The jury was then excused from the courtroom, defense counsel moved for a mistrial, and the trial court conducted a conference with counsel to address the impropriety. After hearing from both parties, the trial court denied the motion for mistrial, finding that the inappropriate response was not elicited by the prosecutor, that the witness' answer was not responsive to the question, and that the curative instruction given to the jury immediately after the response was adequate. The trial court also noted that the statement that Smith had used her sister's name before did not necessarily mean that such use constituted a crime. Furthermore, the trial court offered to give an additional curative instruction to the jury. Defense counsel acknowledged that a curative instruction had already been given to the jury and ultimately decided that an additional curative instruction would just highlight the response at issue.

It is well settled that evidence of the character of the defendant, "including evidence which in any manner shows or tends to show that the accused has committed

other criminal acts," usually is inadmissible.[30] In this case, however, the witness' reference to Scott's statement did not identify any specific instance in which Smith had previously used her sister's name, nor did it specify that such use was unauthorized.

Furthermore, "a mistrial is not always required when testimony improperly touches upon the character of the accused, especially when the testimony is not purposefully elicited by the State."[31] Here, the trial court correctly found that the prosecutor did not purposefully elicit the witness' response and that the witness' answer was not responsive to the specific question. The trial court immediately gave a curative instruction to the jury directing them to disregard the statement of the witness. In this case, we find that the curative instruction was sufficient to remedy any prejudice that may have arisen from the witness' statement.[32]

---

[30] *Crane v. State*, 294 Ga. App. 321, 325 (2) (670 SE2d 123) (2008); see also OCGA § 24-2-2.

[31] *Russell v. State*, 308 Ga. App. 328, 330 (707 SE2d 543) (2011).

[32] See *Dukes v. State*, 273 Ga. 890, 892–893 (3) (b) (548 SE2d 328) (2001) (prompt curative instruction was sufficient to remedy prejudice from unsolicited testimony that defendant had been incarcerated for 22 years); *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997) (prompt curative instruction sufficient to remedy prejudice from unsolicited testimony suggesting that defendant was on probation).

17

7. In her last enumeration of error, Smith contends that the trial court improperly charged the jury by giving the State's requested charge regarding "strict liability" and refusing to give Smith's requested charge regarding "accident" with regard to the moving traffic offenses of homicide by vehicle and reckless driving. We disagree.

(a) Smith first asserts that the trial court erred in charging the jury on strict liability, arguing that the evidence presented at trial did not support such a charge.

At trial, the trial court instructed the jury that "[t]he moving traffic violations defined in the Official Code of Georgia Title 40, Chapter 6 are strict liability offenses," and that the State is therefore not required to prove mental fault. The trial court further instructed the jury that, in the context of the offense of reckless driving, "the State will have met its burden of proof as to the Defendant's criminal intent if you find beyond a reasonable doubt that the defendant operated her motor vehicle in a reckless disregard for the safety of persons or property."

"[V]iolations of the offenses set forth in Title 40, Chapter 6, unless otherwise indicated, are strict liability offenses. As such, the [S]tate is not required to prove

18

mental fault."[33] When prosecuting "strict liability" traffic offenses, the State is still required to show criminal intent, but "criminal intent does not always equate to mental fault, guilty knowledge, or purposeful violation of the law."[34] Rather, the State meets its burden of proof as to criminal intent in strict liability traffic offenses if it establishes beyond a reasonable doubt that the defendant voluntarily committed the act that the statute prohibits.[35] In this case, to prove the offense of reckless driving, the State must show that the defendant committed a specified act evidencing a reckless disregard for the safety of persons or property; speeding can form the basis for a reckless driving conviction.[36] Here, the basis for the reckless driving charge was that Smith was driving at an excessive rate of speed, and the State presented evidence that Smith was driving at 90 m.p.h. when she collided with the victims' vehicle. As

---

[33] *Augustin v. State*, 260 Ga. App. 631, 633-634 (2) (580 SE2d 640) (2003); *Hoffer v. State*, 192 Ga. App. 378, 380 (1) (384 SE2d 902) (1989) (moving traffic violations are strict liability offenses, "[t]hus there is no requirement to prove mental fault or mens rea").

[34] See *State v. Ogilvie*, __ Ga. __ (2) (a) (Case No. S12G0703, decided November 5, 2012).

[35] Id.

[36] See *Fraser v. State*, 263 Ga. App. 764, 765 (1) (589 SE2d 329) (2003).

the trial court's jury instructions regarding strict liability were supported by case law and by the facts of the present case, we find no error.

(b) Although Smith contends that the trial court erred in failing to give her requested charge on accident, the record shows that the trial court gave a charge on accident that tracked the language in her requested charge.[37]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[37] See *Ogilvie*, supra at (2) (b).