309 Ga. 11
FINAL COPY

S20A0500.  NORRIS v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Melissa Norris was convicted of malice murder and a related firearm offense in connection with the shooting death of her father, Charles.[1]  Norris appeals, arguing that

---

[1] On February 28, 1996, Norris was indicted for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony.  Following her first jury trial in August 1997, Norris was found guilty of malice murder, aggravated assault, and possession of a firearm during the commission of a felony, and was acquitted of felony murder. She was sentenced to life in prison plus five years, and this Court affirmed her convictions and sentences on direct appeal.  See *Norris v. State*, 282 Ga. 430 (651 SE2d 40) (2007).

Norris filed a petition for habeas relief in 2012, which was granted by the habeas court.  This Court affirmed the habeas court's ruling in part and reversed in part.  See *Seabolt v. Norris*, 298 Ga. 583 (783 SE2d 913) (2016). Norris was then re-tried for malice murder, aggravated assault, and possession of a firearm during the commission of a crime.  Her second jury trial took place from September 18 to 20, 2017; the jury returned guilty verdicts on all counts. She was, once again, sentenced to life in prison plus five years.  Norris filed a motion for new trial through new counsel on October 19, 2017.  After a hearing, the trial court denied the motion on September 9, 2019.  Norris timely filed a notice of appeal to this Court.  The appeal was docketed to the term of this Court beginning in December 2019, and oral argument was held on April 21, 2020.

the trial court erred by failing to charge the jury on mistake of fact. We affirm.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial established that Norris and her father had a strained relationship based on Norris's refusal to follow her parents' rules. On December 20, 1995, Norris, who was 15 years old at the time, called her best friend, Alicia Osborne,[2] and stated that she had been arguing with her father and that she was "fixing to do something." Alicia later told officers that Norris had previously threatened to kill her father.

Sometime after ending her call with Alicia, Norris took a gun from her brother's room, walked downstairs to the couch where her father was sitting, pointed the gun at the back of his head, and shot him. Norris left the scene, still holding the gun, and ran up the road to a nearby restaurant to find her brother. Once there, she told her brother that she had shot their father; he stated that he did not believe her, but took the gun from her and threw it into a nearby

---

[2] At Norris's re-trial, this witness used her married name, Alicia Martin.

dumpster. Officers later recovered a .38-caliber handgun and a washcloth from that dumpster.

Norris then called Alicia and admitted to shooting her father. The pair did not call for help or notify law enforcement; instead, they met up and walked down the street to Alicia's aunt's house for dinner. Alicia's aunt noticed that the girls were acting "giggly" and whispering back and forth throughout dinner.

That afternoon, Charles Norris was found shot to death in his home. The medical examiner concluded that he died from a single gunshot wound to the back of his head and that the gunshot wound was a contact wound.[3] The medical examiner also located a bullet during the autopsy and turned it over to the GBI for further testing. The firearm examiner concluded that the bullet was fired from the .38-caliber handgun previously retrieved from the restaurant dumpster.

After providing numerous conflicting stories to law

---

[3] The medical examiner explained that a contact wound occurs when the barrel of a gun is in contact with the victim's body when the weapon discharges.

enforcement, including telling officers that her brother had shot the victim and that she was not at home when the shooting occurred, Norris eventually admitted that she shot her father in the back of the head. The State also introduced a letter Norris wrote to the District Attorney in 2009, wherein she stated, in pertinent part:

> Of course, there is no excuse for my wrongdoing, but you have to know that I didn't just up and decide to kill my father maliciously, that's not the life of a normal 15 year old. I won't point the finger elsewhere because I now take full responsibility, which I actually started the night I confessed.

Norris testified at trial that she pointed the gun at the back of her father's head, that she did not know whether the gun was loaded, and that she was "just being stupid, horsing around," when the gun went off. Norris argued that the shooting was an accident.

1. Though not enumerated as error, consistent with our customary practice in murder cases, we have reviewed the sufficiency of the evidence, and we conclude that the evidence presented at trial was sufficient to authorize a rational jury to reject Norris's claim of accident and find her guilty beyond a reasonable

doubt of the crimes for which she was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *State v. Newman*, 305 Ga. 792, 795 (1) (827 SE2d 678) (2019).

2. In her sole enumeration of error, Norris claims that the trial court erred by failing to charge the jury on mistake of fact. The record shows that, during the charge conference, Norris requested the trial court read the suggested pattern jury instruction for mistake of fact, which, tracking the applicable statute, stated that "[a] person shall not be found guilty of a crime if the act (or omission to act) constituting the crime was induced by a misapprehension of fact that, if true, would have justified the act or omission." See OCGA § 16-3-5 (defining mistake of fact). Norris argued that the charge was warranted based upon her testimony that she did not know whether the gun was loaded prior to its discharge. The trial court disagreed and refused to give the requested charge. Norris argues that this was error.

As an initial matter, the record shows that Norris did not object to the trial court's ruling and did not lodge an objection at the end of

the trial court's final charge to the jury. Because Norris failed to object in the trial court, this Court can only review her claim for plain error. See OCGA § 17-8-58 (b); *Thomas v. State*, 297 Ga. 750, 752 (2) (778 SE2d 168) (2015) (holding that, where trial counsel requests a jury charge and argues in support of the same, but does not object when the trial court refuses to give the requested instruction, the alleged error is reviewed for plain error). Consequently, we may reverse only "if the instructional error was not affirmatively waived by the defendant, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." (Citation and punctuation omitted.) *Woodard v. State*, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015). See also *State v. Kelly*, 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011). Norris has failed to show that the trial court committed plain error.

Norris's entire claim is premised on the assertion that there was evidence to support a mistake of fact jury charge. Through a complex analysis of the Georgia Code and English common law,

Norris argues that Georgia law allows a defendant to assert a mistake of fact defense in order to reduce her culpability for an alleged crime, even where the underlying conduct — in this case, pointing a firearm at her father's head and firing — is "unlawful." Because of this, Norris argues that she was entitled to a mistake of fact jury charge. Norris's intricate common-law argument is so convoluted and unsupported by Georgia authority directly on point that we cannot say that the trial court's ruling amounted to "clear and obvious error beyond reasonable dispute." (Citation and punctuation omitted.) *Westbrook v. State*, 308 Ga. 92, 101 (5) (a) (839 SE2d 620) (2020). See also *Simmons v. State*, 299 Ga. 370, 374 (2) (788 SE2d 494) (2016) ("An error cannot be plain where there is no controlling authority on point." (citation and punctuation omitted)).

Moreover, Norris's claim fails because she cannot show that the trial court's failure to give the charge likely affected the outcome of the proceedings. See *Kelly*, 290 Ga. at 32-33 (2) (a). The evidence presented at trial established that Norris fought with her father prior to his death, told her friend she was "fixing to do something"

immediately prior to the shooting, was holding the gun to her father's head when it fired, fled the scene and failed to call for help after the shooting, had her brother throw the murder weapon in a dumpster, went to dinner and hung out with her friend after committing the crimes, admitted to numerous people she had shot her father, lied to law enforcement on numerous occasions about her role in her father's death, and wrote a letter to the District Attorney taking "full responsibility" for her father's death.

Given the strength of the State's case, the trial court's refusal to instruct the jury on mistake of fact does not amount to plain error. See *Hampton v. State*, 302 Ga. 166, 169 (2) (805 SE2d 902) (2017); *Davis v. State*, 302 Ga. 576, 582-583 (3) (805 SE2d 859) (2017).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 1, 2020.
Murder. McDuffie Superior Court. Before Judge Hammond.
*Lee & Ziegler, Christopher R. Lee, Konrad G. W. Ziegler*, for appellant.
*William P. Doupé, District Attorney, James W. Allen, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.