**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 9, 2022**

# In the Court of Appeals of Georgia

A21A1380. HOLLEY v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury convicted Kmesha Latesh Holley of two counts of homicide by vehicle in the first degree and one count each of reckless driving, failure to exercise due care, and failure to stop at a stop sign.[1] Holley filed a motion for a new trial, which she subsequently amended. The trial court denied Holley's motion, and Holley appeals. She argues that (1) the evidence was insufficient to support her convictions, (2) the trial court erroneously admitted video-recorded evidence, (3) the court erred by failing to give a jury instruction on "accident," and (4) she received ineffective assistance of counsel. For the following reasons, we affirm Holley's convictions.

---

[1] The trial court granted a directed verdict on a charge of serious injury by vehicle.

1. Holley first asserts that the evidence was insufficient to support her convictions. We disagree.

> On appeal from a criminal conviction, the appellate court views the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. The appellate court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the reviewing court must uphold the jury's verdict.

*Harris v. State*, 360 Ga. App. 695, 697 (859 SE2d 587) (2021) (citations and punctuation omitted); see *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Viewed in that light, the evidence shows that Holley was driving with her three children when they were involved in a collision with another vehicle driven by Steve Davis and occupied by his wife. Davis and Holley's nine-year-old daughter were killed in the collision. Holley, her other two children, and Davis's wife were severely injured.

The collision occurred at the intersection of Spring Flats and County Line Road in Dougherty County, and a map of the collision site was introduced as an exhibit during Holley's trial. Keith Butterworth, a Georgia State Patrol officer who specializes in collision reconstruction and was qualified as an expert at trial, testified that he had investigated more than a thousand accidents. During the accident reconstruction in this case, Butterworth walked through the scene, marked roadway evidence (including gouges, tire marks, and final resting place of the vehicles and victims), noted damage to vehicles and road structures (including a stop sign and guy wire pole), photographed the scene, took measurements at the scene, spoke with family members, inspected the vehicles at the scene and at the wrecker yard, and created a diagram of the evidence. Following his investigation, Butterworth concluded that Holley was driving on Spring Flats, which has stop signs at the intersection, and Davis was driving on County Line Road, which does not have a stop sign at the intersection. He further concluded based on his investigation that the front of Holley's car struck the driver's side of Davis's vehicle. Police and paramedics were dispatched to the scene at approximately 4:30 p.m., at which time it was daylight, and there were no weather conditions or anything else that would have obstructed one's vision at the scene.

3

Daniel Joiner, another Georgia State Patrol officer also specializing in collision reconstruction and qualified as an expert at trial, testified that he used a crash data retrieval program to recover black box data from both vehicles involved in the collision. Joiner, who had worked on approximately 1,500 crashes, was certified to analyze the data and, at the time of the trial, had analyzed data from 30-40 black boxes since receiving specialized certification in black box data recovery. Vehicle black box data can include information such as when or if brakes were applied, whether cruise control was on, the speed of the vehicle, and any vehicle acceleration. According to Joiner, his data interpretation revealed that both vehicles were traveling in excess of 60 miles per hour immediately prior to the collision. Joiner visited the site and reviewed the accident reconstruction diagram, and he opined based on his investigation that Davis's truck had the right of way and that Holley failed to stop her vehicle at the stop sign. In addition, an officer who responded to the scene testified that based on his observations and evidence he recorded at the crash site, he issued citations to Holley.

Chanda Boyd, the aunt of two of Holley's children, testified that after the collision, her mother showed her a video posted on Holley's Facebook account. Boyd used her cell phone to record the Facebook video from her mother's phone. The

4

recording made by Boyd was admitted by the trial court and played for the jury. The seven-and-a-half-minute video memorialized the events immediately prior to, during, and following the collision. During the video, Holley and her three children are seen in the car while Holley is driving and presumably holding the phone. The phone captures video of Holley from both sides. The group wishes everyone a happy Thanksgiving as the phone pans the car, and Holley twice comments that the group is "on the road." The group continues talking while music is playing, and the phone continues to pan the car, then a scream is heard, and the phone begins filming the interior roof of the car while the occupants are silent. The phone twice records someone asking about injuries. Later, one of the boys begins crying and asking for his mom, and finally someone leans in the car and asks if everyone is okay before the video stops.

Based on these facts, the jury found Holley guilty of two counts of homicide by vehicle in the first degree and one count each of reckless driving, failure to exercise due care, and failure to stop at a stop sign. Holley argues that the State "failed to prove beyond a reasonable doubt that [she] drove her vehicle in reckless disregard for the safety of persons or property, failing to yield the right of way and causing the deaths of Davis or [her daughter]." According to Holley, Butterworth

offered "purely conclusory" testimony regarding her fault, and no evidence supported the expert's opinion. This assertion, however, fails to recognize Butterworth's testimony that he had investigated more than a thousand accidents and, during the course of the accident reconstruction in this case, he (i) personally inspected the vehicles, (ii) observed and measured gouges and tire marks in the roadway, as well as the placement of the vehicles and victims, (iii) noted damage to a stop sign and guy wire pole, and (iv) requested data analysis of the vehicles' black boxes, which revealed that both vehicles were traveling in excess of 60 miles per hour at the time of the collision. This evidence was sufficient to support Butterworth's conclusion that Holley was driving on Spring Flats and failed to stop her vehicle at the designated stop sign, striking the driver's side of Davis's vehicle. Accordingly, contrary to Holley's assertion, the evidence was sufficient for a rational trier of fact to find that Holley failed to stop at a stop sign, thus failing to yield the right of way. See OCGA § 40-6-72 (failure to stop or yield).

Furthermore, all of the charges brought against Holley were based on Holley's operation of her motor vehicle while failing to yield the right of way and using a mobile device to the point that she was distracted. Not only did the evidence detailed above authorize the jury to find Holley guilty of the charged offenses based on her

6

failure to yield the right of way, but the video recording introduced into evidence and played for the jury permitted the jury to infer that Holley failed to exercise due care and recklessly disregarded the safety of her passengers and others on the road by using a mobile device and not paying attention to the road in front of her while traveling in excess of 60 miles per hour. See OCGA §§ 40-6-241 (failure to exercise due care), 40-6-390 (reckless driving), 40-6-393 (homicide by vehicle). Accordingly, her convictions are supported by the evidence, and the trial court did not err in denying her motion for a new trial on this ground.

2. Holley next asserts that the trial court erred in admitting, over her objection, the Facebook video recorded by Boyd and purportedly posted by Holley. According to Holley, the video shown to the jury was "a video (on Boyd's phone) . . . of a video (on Boyd's mother's phone) . . . of a video (on a Facebook page)," and it should have been excluded because the State failed to authenticate it.[2] This enumeration of error lacks merit.

"Under Georgia's Evidence Code, authentication of evidence may be achieved through any of a variety of means so long as there is evidence sufficient to support a finding that the matter in question is what its proponent claims." *Intemann v. State*,

---

[2] Holley does not assert any hearsay challenges to the recording.

7

358 Ga. App. 488, 494 (1) (855 SE2d 666) (2021) (citation and punctuation omitted). See OCGA § 24-9-901 (a), (b). Authentication may be achieved through "[t]estimony of a witness with knowledge that a matter is what it is claimed to be." OCGA § 24-9-901 (b) (1). "Documents from electronic sources such as the printouts from a website like Facebook are subject to the same rules of authentication as other more traditional documentary evidence and may be authenticated through circumstantial evidence." *Hawkins v. State*, 304 Ga. 299, 304 (4) (a) (818 SE2d 513) (2018) (citation and punctuation omitted). "Once the party seeking to authenticate evidence presents a prima facie case that the evidence is what it purports to be, the evidence is properly admitted, leaving the ultimate question of authenticity to be decided by the jury." *Nicholson v. State*, 307 Ga. 466, 475 (5) (837 SE2d 362) (2019); accord *Intemann*, 358 Ga. App. at 495 (1). This Court reviews a trial court's decision to admit or exclude evidence for a clear abuse of discretion. *Intemann*, 358 Ga. App. at 495 (1); accord *Hawkins*, 304 Ga. at 303-304 (4).

Here, Boyd testified at trial that she knew Holley shared information on Facebook and that she was familiar with Holley's Facebook posts because, although Boyd did not have her own Facebook account, she used her mother's account to keep up with her family. According to Boyd, the video she recorded was posted on

8

Holley's Facebook account, and she recognized the people in the video. Boyd identified those people at trial as Holley and her three children. Boyd also identified a picture of her nine-year-old niece (who was killed in the collision) to corroborate the video identification. In addition, Boyd testified that the State's exhibit, which she initialed after viewing it with the investigator, was an accurate, unaltered depiction of the video she saw on her mother's phone and the exact video she recorded from Facebook and gave to an officer. Based on this testimony, the trial court was authorized to find that the State established a prima facie case that the recorded video accurately reflected the contents of the video posted on Holley's Facebook account. See *Intemann*, 358 Ga. App. at 495-496 (1); see also OCGA § 24-9-901 (b) (1).

On appeal, Holley asserts that the video was not properly authenticated because Boyd failed to testify about any distinctive characteristics of the Facebook account, including biographical information, an IP address, a phone number, or other information identifying the Facebook account as belonging to Holley. However, although OCGA § 24-9-901 (b) (4) permits authentication through "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances[,]" the State in this case presented ample circumstantial evidence, set forth above, to authenticate the video under OCGA § 24-

9-901 (b) (1) – "[t]estimony of a witness with knowledge that a matter is what it is claimed to be[.]" "Suffice it to say, the State was not limited to authenticating the [video] through [Holley's] preferred method." *Johnson v. State*, 348 Ga. App. 667, 676 (1) (b) (824 SE2d 561) (2019). Accordingly, the trial court did not abuse its discretion by admitting the recorded video into evidence at trial and leaving the ultimate question of its authenticity to be decided by the jury. See *Nicholson*, 307 Ga. at 475 (5); *Hawkins*, 304 Ga. at 304 (4) (a).

3. Holley contends that the trial court erred in refusing to give her requested jury charge on accident. "While appellate review of the jury charge is de novo, we review the trial court's refusal to give a requested charge for an abuse of discretion." *Harris*, 360 Ga. App. at 697-698 (citations and punctuation omitted). Pretermitting whether Holley failed to object to the court's refusal to give her requested accident instruction, the evidence in this case did not authorize a charge on accident, and Holley, therefore, has failed to show any error in the court's refusal to give the requested charge.

This Court repeatedly has noted that "first-degree vehicular homicide and reckless driving charges are strict liability offenses . . . , meaning that they can be committed without a culpable mental state."*Mitchell v. State*, 355 Ga. App. 7, 10-11

10

(2) (842 SE2d 322) (2020) (citation and punctuation omitted); *Smith v. State*, 319 Ga. App. 164, 164, 172 (7) (a) (735 SE2d 153) (2012); accord *Harris*, 360 Ga. App. at 701 (3). In other words, "strict liability [traffic] offenses . . . [may] be violated without mens rea or guilty knowledge," and "there is no requirement to prove mental fault or mens rea" to establish such offenses. *Hoffer v. State*, 192 Ga. App. 378, 380 (1) (384 SE2d 902) (1989). That being said, although strict liability traffic offenses "do not require the specific intent or wrongful purpose that is an element of other crimes, . . . they do require the defendant to have voluntarily committed the act that the statute prohibits, which typically involves driving at a particular time and place . . . or in a particular way." *State v. Ogilvie*, 292 Ga. 6, 9 (2) (a) (734 SE2d 50) (2012) (citations omitted). As this Court recently clarified, "intent in the context of traffic offenses, *such as reckless driving*, . . . requires [only] that the State prove *general* criminal intent, which is simply the intent to do the act which results in the violation of the law, and not the intent to commit the crime itself." *Harris*, 360 Ga. App. at 701 (3) (citation and punctuation omitted; emphasis in original and supplied). Accordingly, "the State meets its burden of proof as to criminal intent in strict liability traffic offenses if it establishes beyond a reasonable doubt that the defendant voluntarily committed the act that the statute prohibits." *Smith*, 319 Ga. App. at 173

11

(7) (a). See *Hoffer*, 192 Ga. App. at 379-380 (1) (concluding that the State did not have to prove that the defendant "intentionally drove through a red light, or even that [the defendant] knew that the light was red," but rather only had to prove that the defendant drove his car through the intersection and that he intended to drive his car through the intersection at a point in time when the light facing the defendant's lane of travel was red).

Reckless driving likewise does not require proof that a defendant intended to violate the law or a penal statute but rather requires merely proof that the defendant intended to commit the act that is prohibited by the statute, albeit under a given set of circumstances that render the act reckless (i.e., criminally negligent). See *Smith*, 319 Ga. App. at 173 (7) (a) ("[T]o prove the offense of reckless driving, the State must show [only] that the defendant committed a specified act evidencing a reckless disregard for the safety of persons or property."). In fact, on more than one occasion, this Court has concluded that "a charge on accident is not authorized when the 'accident' occurs as the defendant is driving recklessly," *Dryden v. State*, 316 Ga. App. 70, 77 (6) (728 SE2d 245) (2012); accord *Lauderback v. State*, 320 Ga. App. 649, 652 (3) (740 SE2d 377) (2013) (involving conviction for reckless driving), because a reckless driving offense concerns "the defendant's condition while driving

12

and not . . . any traffic mishap that occurred while he was operating the motor vehicle." *Davis v. State*, 301 Ga. App. 484, 487 (2) (687 SE2d 854) (2009) (citations and punctuation omitted).

In summary, because first-degree vehicular homicide and reckless driving are strict liability offenses: (1) no "culpable mental state" need be proven, see *Ogilvie*, 292 Ga. at 8-9 (2) (a); (2) the "criminal intent" requirement refers to only a "general criminal intent" to commit the underlying prohibited act, not an intent to produce the result, see, e.g., *Harris*, 360 Ga. App. at 701 (3); and (3) "criminal negligence" refers simply to the presence of a set of circumstances that render the underlying actions a "reckless disregard for the safety of persons or property," see *Smith*, 319 Ga. App. at 173 (7) (a); accord OCGA § 40-6-390 (a). *Walden v. State* clarifies the proof necessary to demonstrate criminal negligence in the context of traffic offenses: "The violation of [a] safety statute regulating the use of highways" constitutes criminal negligence where it is "intentional, wilful, or wanton," or where the unintentional violation is accompanied by "recklessness or carelessness of such character as to show a disregard of consequences or a heedless indifference for the safety and rights of others who might reasonably be expected to be injured thereby." 273 Ga. App. 707,

13

711 (1) (616 SE2d 462) (2005) (citation and punctuation omitted); see also *Smith v. State*, 237 Ga. App. 77, 79 (2) (514 SE2d 710) (1999).

Here, Holley was convicted both of reckless driving and of first-degree vehicular homicide predicated on reckless driving, so the intent required for reckless driving impacts both convictions. The offense of reckless driving requires proof that (a) the defendant was driving (b) "in reckless disregard for the safety of persons or property." OCGA § 40-6-390 (a). Thus, to prove the offense of reckless driving as charged in the indictment, the State was required to show that Holley committed a prohibited act as alleged in the indictment – either failing to yield the right of way while driving (regardless of whether Holley intended to fail to yield the right of way) or using a mobile device to the point of distraction while driving (regardless of whether Holley intended to be distracted)[3] – evidencing a reckless disregard for the safety of persons or property. There is no need to establish that Holley "intended" to

[3] Although the indictment charged Holley with reckless driving by "fail[ing] to yield the right of way *and* us[ing] a mobile device to the point that she was distracted" (emphasis supplied), the State was required to prove only that the offense was committed in either of the separate ways listed in the indictment. *Thompson v. State*, 358 Ga. App. 553, 556 (1) (855 SE2d 756) (2021); accord *Chynoweth v. State*, 331 Ga. App. 123, 125 (1) (768 SE2d 536) (2015) ("It is sufficient for the State to show that a crime was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form.") (citation and punctuation omitted).

drive "criminally negligently" or even that Holley "intended" to fail to yield the right of way, become distracted by her mobile device, or put others or their property at risk. As stated previously, "the State meets its burden of proof as to criminal intent in strict liability traffic offenses if it establishes beyond a reasonable doubt that the defendant voluntarily committed the act that the statute prohibits." *Smith*, 319 Ga. App. at 173 (7) (a). Accordingly, criminal negligence was established in this case when the jury determined that Holley failed to yield the right of way while driving her car, drove her car while live-streaming a video from her phone (which impeded her ability to pay attention to the road in front of her), or both.

Turning to the accident defense, OCGA § 16-2-2 provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."

> This accident defense applies where the evidence negates the defendant's criminal intent, whatever that intent element is for the crime at issue. Accordingly, a jury charge on the defense of accident to a strict liability traffic offense is available only where there is evidence, however slight, that the defendant did not voluntarily commit the prohibited act.

15

*Ogilvie*, 292 Ga. at 9 (2) (b); accord *Harris*, 360 Ga. App. at 696, 701 (3) (involving convictions for first-degree vehicular homicide and reckless driving); *Mitchell*, 355 Ga. App. at 10-11 (2) (same). "The defense must be based on evidence that the prohibited act was committed involuntarily, for example, because of an unforeseeable physical ailment or external force." *Mitchell*, 355 Ga. App. at 11 (2) (citations and punctuation omitted). Thus, for purposes of a jury instruction on accident, the "accident" does not refer to the collision or to Holley's failure to yield and/or distracted driving that resulted in the collision, but rather refers to Holley's underlying actions that preceded and caused her failure to yield and/or distracted driving that resulted in the collision. See *Ogilvie*, 292 Ga. at 10 (2) (c) (where defendant-driver hit a pedestrian in a crosswalk, she was not entitled to rely on the defense of accident because – although there was evidence that the pedestrian jumped out in front of the car – there was no evidence that the defendant drove her car into the crosswalk involuntarily).

Here, Holley does not identify any evidence that would support a finding that either (1) she involuntarily drove her car through the intersection while failing to yield and/or while live-streaming video or (2) an external force or physical ailment caused her to commit those acts; she simply makes conclusory statements that her

16

defense at trial was based on accident.[4] "Because there was no evidence demonstrating that the prohibited act[s were] committed involuntarily, for example, because of an unforeseeable physical ailment or external force, the trial court did not abuse its discretion [by refusing to give a charge on the defense of accident]."[5] *Harris*, 360 Ga. App. at 701 (3) (citation and punctuation omitted); accord *Mitchell*, 355 Ga. App. at 11 (2); *Dryden*, 316 Ga. App. at 77 (6).

4. In her final enumeration of error, Holley asserts that her trial counsel provided ineffective assistance by failing to (a) object to the court's refusal to charge

---

[4] To the extent that Holley suggests that she "accidentally" failed to yield, and, as a result, "accidentally" collided with Davis's vehicle, any such claim is beside the point for purposes of the jury instruction on "accident" as a defense. That Holley did not intend to fail to yield is irrelevant, so long as (a) she intentionally drove her car in a manner that took her into the intersection (b) under circumstances in which the law required her to yield to another vehicle. See *Ogilvie*, 292 Ga. at 8-10 (2) (a)-(c); *Hoffer*, 192 Ga. App. at 379-381 (1)-(2).

[5] While the evidence here did not "mandate" a finding of reckless disregard (which was for the jury to decide), that is immaterial. For the reasons discussed above, Holley was entitled to a jury charge on accident only if there was some evidence from which the jury could find that she unintentionally or involuntarily committed the underlying prohibited actions, regardless of whether those actions constituted "reckless disregard for the safety of persons or property" under the circumstances and regardless of whether Holley "intended" her underlying actions to be in "reckless disregard for the safety of persons or property" under the circumstances. See, e.g., *Ogilvie*, 292 Ga. at 10 (2) (c); *Mitchell*, 355 Ga. App. at 11 (2).

17

the jury on accident, (b) properly argue the defense theory to the jury, and (c) obtain the result of a blood alcohol test performed on Davis, the driver of the other vehicle involved in the collision. The trial court found that Holley had not met her burden of establishing ineffective assistance. We conclude that the trial court did not err in denying Holley's motion for a new trial on this ground. See *Hulett v. State*, 296 Ga. 49, 60 (5) (766 SE2d 1) (2014) (an ineffective-assistance claim is a mixed question of law and fact, and we accept the trial court's factual findings unless clearly erroneous but independently apply the law to those facts); see also *Strickland v. Washington*, 466 U. S. 668, 698 (IV) (104 SCt 2052, 80 LE2d 674) (1984).

In order to establish that her trial counsel was constitutionally ineffective, Holley must show that her attorney's performance was deficient and that she was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687 (III). "Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms." *Manner v. State*, 302 Ga. 877, 881 (II) (808 SE2d 681) (2017). "This requires a defendant to overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment."

18

*Morris v. State*, 303 Ga. 192, 201 (VI) (811 SE2d 321) (2018) (citation and punctuation omitted). To satisfy the second prong, there must be a reasonable probability that, absent counsel's errors, the outcome of the trial would have been different. *Manner*, 302 Ga. at 881-882 (II). Holley must satisfy both prongs of the *Strickland* test, and if she is unable to satisfy one, we need not examine the other. *Morris*, 303 Ga. at 201 (VI).

(a) Holley first argues that her trial counsel was ineffective by failing to object to the court's refusal to charge the jury on accident. However, as we concluded in Division 3, the trial court properly refused to give Holley's requested jury charge on accident. Consequently, Holley cannot show that her trial counsel's failure to object to the court's refusal to so charge fell outside the range of reasonable professional conduct. See *Newman v. State*, 309 Ga. 171, 178-180 (2) (c), (e) (844 SE2d 775) (2020) (failure to make a meritless objection will not support a finding of ineffective assistance). Accordingly, Holley failed to demonstrate that her trial counsel was ineffective on this ground.

(b) Holley next asserts that her trial counsel was ineffective by failing to properly argue the defense theory to the jury. Specifically, Holley maintains that her trial counsel should have argued in closing that the evidence did not support a finding

19

that she was driving on the road with the stop sign, that she ran the stop sign, and that, consequently, she caused the collision. Indeed, trial counsel testified at the motion for a new trial hearing that the defense theory of the case

> was that there was not a clear, first-hand recollection of all of the events that would have occurred at the intersection. And there was not really a – there [were] no third-party witnesses who were present to observe the collision. There was no video footage of the intersection itself showing the respective positions of the vehicles or the lack, as such. We were saying that the State had generally failed to carry its burden in terms of proving exactly which vehicle was traveling in which direction and what the exact circumstances were for both vehicles at the time of the collision.

Contrary to Holley's argument, however, the trial transcript shows that her trial counsel, in fact, did present the defense theory in his closing argument.

During his closing argument, trial counsel explained that the State had the burden to prove beyond a reasonable doubt the directions Holley and Davis were traveling and that Holley was the individual who ran the stop sign. Specifically, he argued that the parties disputed the directions in which the vehicles were traveling, no one actually observed the collision and testified about what happened when the cars met in the intersection, and there was no video surveillance of the collision. He

20

asserted that even Davis's wife, who was involved in the collision and testified at trial, could not say what occurred. In addition, trial counsel reminded the jury that one of the accident reconstruction experts who gave an opinion about the vehicles' directions of travel did not testify about any conversations he had with individuals involved in the collision. He also discussed evidence that the State did not introduce, such as a map of where the parties were driving to and from.

Although trial counsel testified at the motion for a new trial hearing that he did not recall or specifically mention during his closing argument the single statement made by Davis's wife when she testified that her vehicle was traveling on Spring Flats Road, the road with the stop sign, trial counsel presented Holley's defense theory during closing argument, and "a closing argument is to be judged in the context in which it is made." *Anthony v. State*, 311 Ga. 293, 298 (4) (857 SE2d 682) (2021) (citation and punctuation omitted). "With respect to closing argument, defense counsel is permitted wide latitude and is not ineffective simply because another attorney might have used different language or placed a different emphasis on the evidence." Id. (citation and punctuation omitted); accord *Harris v. State*, 345 Ga. App. 80, 81 (1) (b) (812 SE2d 342) (2018) ("[T]he fact that another attorney might have made a different closing argument does not show ineffectiveness.") (citation and

21

punctuation omitted). In this case, "[t]rial counsel's argument was in furtherance of the trial strategy and fell within the broad range of reasonable professional conduct, and [it, therefore,] was not deficient." *Wallace v. State*, 341 Ga. App. 576, 580 (2) (802 SE2d 34) (2017). The trial court did not err in denying Holley's ineffectiveness claim on this ground.

(c) Finally, Holley contends that her trial counsel was ineffective by failing to obtain and introduce into evidence the result of a blood alcohol test performed on Davis, the driver of the other vehicle involved in the collision.

At the motion for a new trial hearing, the first officer who responded to the collision testified about a crash report that he prepared. The report noted that law enforcement did not suspect drug or alcohol use by Davis, but a blood alcohol test was given and the result was pending as of the date of the report. The officer testified that he did not have the result of the test and did not know what happened with the test. However, he further testified that the blood test result would not have changed his opinion that Davis did nothing to cause the collision.

Holley also called a county coroner to testify at the hearing on her motion for a new trial. According to the coroner, he drew blood from Davis's body for a toxicology test, as indicated on his report, but he did not know the result of the test.

22

Holley did not question her trial counsel at the motion for a new trial hearing about his attempts to obtain the result of Davis's blood alcohol test or why he would not have done so.

Holley's claim in this regard fails for two reasons. First, we do not agree with her characterization of this evidence as "extremely relevant." The evidence shows that Davis did nothing to cause the collision, regardless of his blood alcohol level. Even the officer who responded to the scene testified at the motion for a new trial hearing that Davis's blood test result would not have changed his opinion regarding fault for the collision.

In addition, although Holley speculates that Davis's blood alcohol test result would have helped her case, she failed to introduce or proffer the result of the test at the motion for a new trial hearing.

> The failure of trial counsel to employ evidence cannot be deemed to be prejudicial in the absence of a showing that such evidence would have been relevant and favorable to the defendant. Because appellant failed to make any proffer of the [blood alcohol test result], it is impossible for appellant to show there is a reasonable probability the results of the proceedings would have been different.

*Woods v. State*, 275 Ga. 844, 850 (3) (d) (573 SE2d 394) (2002) (citation and punctuation omitted). "Thus, even if trial counsel acted deficiently in this regard – an issue we do not decide – [Holley] cannot show prejudice from trial counsel's failure to obtain the [test result]." *Wallace v. State*, 303 Ga. 34, 42 (4) (810 SE2d 93) (2018) (failure to tender telephone records precluded claim that trial counsel was ineffective by making inadequate efforts to obtain the records for possible impeachment); accord *Woods*, 275 Ga. at 849-850 (3) (d) (failure to tender videotape into evidence precluded claim that trial counsel was ineffective by failing to use the video as exculpatory evidence). Accordingly, the trial court did not err in denying Holley's ineffectiveness claim on this ground.

*Judgment affirmed. Rickman, C. J., concurs and McFadden, P. J., specially concurs.*

# In the Court of Appeals of Georgia

A21A1380. HOLLEY v. THE STATE.

McFADDEN, Presiding Judge, concurring specially.

I agree that the trial court's refusal to charge on accident was not reversible error. But I reach that conclusion by a different route. I would hold that, under these circumstances, vehicular homicide and reckless driving are not strict liability offenses. So the accident defense is not categorically unavailable. But the facts before us cannot sustain an accident defense.

It is true that the defense of accident is not available for strict liability offenses. And it is true, as the majority correctly holds, that our Supreme Court has held that because violations of the Uniform Rules of the Road are defined by statute as misdemeanor crimes, see OCGA § 40-6-1, they must contain all of the requisite elements of a crime specified by OCGA § 16-2-1(a), including intention. *State v. Ogilvie*, 292 Ga. 6, 8 (2) (a) (734 SE2d 50) (2012). It is also true that the Uniform

Rules of the Road make it a "misdemeanor for any person to do any act forbidden or fail to perform any act required in this chapter." OCGA § 40-6-1. So *"unless the particular provision indicates otherwise,* the traffic offenses defined in Chapter 6's Rules of the Road are 'strict liability' offenses, meaning that they can be committed without a culpable mental state." *Ogilvie,* supra (emphasis supplied; footnote omitted).

In other words, the requisite intent for strict liability is not "specific intent," for example that the defendant "intentionally drove through a red light, or even that [he] knew that the light was red." *Ogilvie*, 292 Ga. at 8 (2) (a), quoting *Hoffer v. State*, 192 Ga.App. 378, 379-380 (384 SE2d 902) (1989) (punctuation added by *Ogilvie*). It is only general criminal intent, which is "simply the intent to do the act which results in the violation of the law, and not the intent to commit the crime itself." Id. a 8 (2) (a) (citation and punctuation omitted).

Here, Holley was charged under a provision of the Uniform Rules of the Road. So she was charged with a strict liability offense and not entitled to an accident defense *"unless the particular provision indicates otherwise*[.]*"* Id. (emphasis supplied). She was charged with homicide by vehicle in the first degree under OCGA

2

§ 40-6-393 (a) "through a violation of OCGA § 40-6-390, Reckless Driving." OCGA § 40-6-393 (a) provides:

> Any person who, without malice aforethought, causes the death of another person through the violation of subsection (a) of Code Section 40-6-163, Code Sections 40-6-390 through 40-6-391, or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the first degree and, upon conviction thereof, shall be punished by imprisonment for not less than three years nor more than 15 years.

OCGA § 40-6-390 (a), the reckless driving statute, provides: "Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving."

*Ogilvie* provides additional guidance in our inquiry into whether OCGA § 40-6-390 (a) sets out a strict liability offense or provides otherwise. In a footnote it provides examples of offenses in the Uniform Rules of the Road that "are not strict liability offenses but contain a specific intent or fault element." One of those — aggressive driving — is particularly instructive.

> Some offenses set forth in Chapter 6 are not strict liability offenses but contain a specific intent or fault element. See, e.g., OCGA § 40–6–10(c) ("Any person who knowingly makes a false statement or certification under Code Section 40–5–71 or this Code section shall be guilty of a misdemeanor...."); OCGA § 40–6–397(a) ("A person

3

commits the offense of aggressive driving when he or she operates any motor vehicle with the intent to annoy, harass, molest, intimidate, injure, or obstruct another person...."). We do not address those offenses in this opinion.

*Ogilvie*, 292 Ga. at 9, n. 2.

Under the plain language of the reckless driving statute, like the aggressive driving statute, no act is specified. Only a specific intent of recklessness is specified by the statute.

So contrary to the holding in the majority opinion, the reckless driving and the first-degree vehicular homicide premised on reckless driving in this case are not strict liability offenses because they require proof of the specific intent of recklessness, rather than just a general criminal intent. Consequently, as to those offenses, I dissent from the majority's reasoning that Holley was not entitled to a jury charge on accident because they were strict liability offenses.

Nevertheless, I agree with the majority's ultimate holding that Holley has failed to show reversible error based on the trial court's refusal to give a jury charge on the defense of accident. Because she did not properly preserve the issue below, we must analyze this issue under the plain error standard. The request was discussed at the charge conference, the trial court ruled that an accident charge was not appropriate,

4

and Holley did not object to that ruling. Following the court's final charge to the jury, the court asked if there were any objections to the charge as given, and Holley's counsel responded, "No, your honor." Under these circumstances, "[b]ecause [Holley] failed to object in the trial court, this [c]ourt can only review her claim for plain error." *Norris v. State*, 309 Ga. 11, 13 (2) (843 SE2d 837) (2020). Accord *Thomas v. State*, 297 Ga. 750, 752-753 (2) (776 SE2d 168) (2015) (failure to object to refusal to give requested accident charge subject to plain error review); *Rouen v. State*, 312 Ga. App. 8, 9-11 (2) (717 SE2d 519) (2011) (same).

Under plain error review, "we may reverse only if the instructional error was not affirmatively waived by the defendant, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Norris*, supra (citation and punctuation omitted). Because all of these factors have not been met in this case, the trial court's refusal to give the requested charge on accident was not plain error.

An "accident defense [under OCGA § 16-2-2] applies where the evidence negates the defendant's criminal intent, whatever that intent element is for the crime at issue." *Ogilvie*, supra at 9 (2) (b). Here, Holley has failed to point to any evidence negating her criminal intent of recklessness. "The trial court therefore was not

5

required to give an accident instruction[.]" Id. at 11-12 (2) (e). So there has been no showing of plain error mandating a reversal of the judgment below.